# ROBERT BERKMAN v. O. F. WECKERLING.

77 N. W. (2d) 291.

May 11, 1956—Nos. 36,569, 36,570, 36,571.

*Robert Berkman*, pro se, for appellant.

*McCabe, Clure, Van Evera & Donovan* and *Wangensteen & Bangs*, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court in favor of O. F. Weckerling, defendant, and against Robert Berkman, plaintiff. This

is an action to vacate three judgments quieting title in defendant to certain properties located at Chisholm, Minnesota. It is alleged by plaintiff that these prior actions were entered without jurisdiction and were obtained by fraud in that plaintiff and his father, C. E. Berkman, were not named as parties in those actions.

The facts necessary to a determination of this case are as follows: The properties involved in these actions prior to 1936 were in the McNiven Land Company. All of the stock in this corporation was owned by J. H. McNiven. In that year J. H. McNiven moved from Chisholm, Minnesota, leaving the operation of the corporation in his brother, Walter McNiven.

It is alleged by the defendant in this action that in the same year and after J. H. McNiven moved from Chisholm he entered into an oral contract with Walter McNiven. Under this contract it is further alleged that Walter McNiven had agreed to convey all of the real property to which the McNiven Land Company had title. It is undisputed that in 1937 J. H. McNiven filed a petition in bankruptcy.

In 1939 the statutory life of the McNiven Land Company expired, and shortly after the expiration of this corporation C. E. Berkman purchased from the trustee in bankruptcy the 500 shares of stock of the McNiven Land Company owned by J. H. McNiven. This transaction was accomplished by a bill of sale running from the trustee in bankruptcy to C. E. Berkman. In December of 1942 C. E. Berkman assigned his interest in the stock to his son, Robert Berkman.

The record also shows that all of the lands involved have a long history of nonpayment of taxes. Some of these taxes were paid by C. E. Berkman after his purchase of the stock although the exact amount is disputed. The record further shows that C. E. Berkman had entered into a repurchase agreement[1] with the county auditor on some of the lots in August 1939. By the terms of this agreement

---

[1]These agreements were authorized by L. 1939, c. 283, and allowed an owner whose lands had been forfeited to the state due to tax delinquency to repurchase such lands by paying not less than 20 percent of all delinquent taxes and the balance within 10 years, plus pledging to pay taxes current from year to year.

it was contemplated that the state would convey title to C. E. Berkman within ten years after the payment of the back taxes was completed and the current taxes were paid.

The record indicates that defendant had full knowledge of all the facts giving rise to Berkman's claimed interest in the property. There is considerable correspondence in the record during the years 1943 and 1944 between defendant's attorney and the Berkmans indicating that negotiations were in progress between the parties to either buy or sell the other's interest in all of the land involved.

Sometime in 1944 two actions to quiet title to a considerable portion of this property were commenced by defendant. At that time service was made upon the McNiven Land Company by serving one Ernest Drew as secretary of the corporation. Later it was claimed by defendant that he had served Drew in reliance upon a statement by C. E. Berkman that Drew was secretary of the corporation. These actions were prosecuted to judgment.

Upon learning of this C. E. Berkman engaged an attorney to move that the judgments in those actions be vacated. After this motion was made there was more correspondence in the record between Berkmans and the attorney for defendant. The clear implication of this correspondence was to the effect that the parties would either get together and reach an amicable settlement or that the actions would be retried inasmuch as all concerned agreed that Drew was not the secretary of the corporation and that, therefore, no jurisdiction had been acquired over the McNiven Land Company. It must also be noted that in the pleadings of those two actions the name of C. E. Berkman was included as the controlling stockholder of the McNiven Land Company and it was alleged that as such he had attempted to deprive defendant of his property and to repudiate the title of defendant.

In 1945 defendant commenced three new actions to quiet title to all of the property now involved. In those actions service was made upon the corporation by serving the secretary of state of the State of Minnesota. Neither of the Berkmans were named as parties in the new actions nor were their names included any place in the pleadings. No notice of these actions was ever given to the Berkmans.

In February of 1946 the Berkmans, who were then living in California and whose address was fully known to both defendant and his attorney, returned to Minnesota for the purpose, according to them, of trying the first actions to quiet title on their merits. It was at this time that they discovered that three later actions to quiet title had been commenced and that judgment had been entered in each of those actions. Various motions were made after this to vacate those judgments, and an appeal was finally prosecuted to this court upon a denial of those motions and this court held in Weckerling v. McNiven Land Co. 231 Minn. 167, 42 N. W. (2d) 701, that the orders appealed from were not appealable.

At about this time the present action was commenced under M. S. A. 548.14. The district court concluded that it had jurisdiction in the three latest actions to quiet title; that the judgments entered in those actions were valid and subsisting; that these judgments were not obtained by fraud and that the plaintiff's claim should be dismissed on its merits with prejudice. On appeal to this court the plaintiff claims that the district court erred (a) in not finding that he was entitled to notice in the actions quieting title to the land here involved and (b) in not finding the judgments null and void in those actions on the grounds that they were obtained without due process of law and by fraud.

The present issue for our consideration is whether the manner in which the second set of actions to quiet title were commenced and prosecuted was legally sufficient. In other words was the defendant in this action required to do more when he commenced the three new actions to quiet title.

At the time the latter actions were brought, the record title to the property was in the name of the McNiven Land Company. The corporation had expired in 1939. According to the general statute under which the corporation was organized, its corporate life was automatically extended for a period of three years for the purpose of winding up its affairs.[2] Thus during this period there was in exist-

---

[2] M. S. A. 1941, § 300.59, reads: "Every corporation whose existence terminates by limitation, forfeiture, or otherwise shall continue for three years thereafter for the purpose of prosecuting and defending actions, closing its

ence a corporation capable of prosecuting or defending actions. In 1941 the legislature passed, as it had in prior legislative sessions, a statute extending the period of life of expired corporations for the purpose of winding up their affairs for a further two-year period. L. 1941, c. 128.

It is significant that in 1943 the legislature did not pass a law extending the life of expired corporations. However, in April 1945, the legislature again passed a law extending for a period of two years the life of corporations whose existence terminated on or before July 1, 1941, for the purpose of winding up its affairs. L. 1945, c. 379. Thus there was a two-year period between 1943 and 1945 when there was no law extending the life of this corporation.

In May of 1945, about one month after the April 1945 legislative act was passed, the three new actions were commenced by the defendant to determine adverse claims of the land under consideration. Service of the McNiven Land Company in those actions was made under M. S. A. 1949, § 543.08. The pertinent portion of that statute reads as follows:

"If the action be against a private domestic corporation, the summons may be served by delivering a copy thereof to its president, vice-president, secretary, cashier, or treasurer, or to any director or managing agent thereof.

"If such domestic corporation have no officer within the state upon whom service can be so made, of which fact the return of the sheriff that none can be found in his county shall be conclusive evidence, service of the summons upon it may be made by depositing two copies thereof with the secretary of state, which shall be deemed personal service upon such corporation. One of such copies shall be filed by such secretary, and the other forthwith mailed by him to the corporation, if the place of its main office be known to him or be disclosed by the files of his office."

It is claimed by the plaintiff that bare compliance with the terms of that statute was a violation of due process and a fraud on the

affairs, disposing of its property, and dividing its capital, but for no other purpose."

court or himself. In this connection the plaintiff further claims that some notice should have been given to him or that he should have been named as a party in those actions.

Only two cases have arisen in Minnesota construing the provision in this statute allowing service upon a domestic corporation by serving the secretary of state. In 1897 the case of Hinckley v. Kettle River R. Co. 70 Minn. 105, 72 N. W. 835, came before this court. In that case a domestic corporation had been formed to construct and operate a short railroad about four miles long. The town of Hinckley, pursuant to L. 1877, c. 106, (G. S. 1894, § 2771, et seq.), had voted to issue the defendant company its bonds for $12,000. By 1891 the road had entirely ceased to operate and the rails, sleepers, switches, ties, and other railroad appurtenances were taken up and carried away and the road entirely vacated and abandoned. In 1894 the town commenced an action against the company for the recovery of its bonds. Jurisdiction over the company was obtained by serving the secretary of state. In 1896 the company moved to vacate the default judgment in that action. In that case our court said (70 Minn. 110, 72 N. W. 836):

"If the mode of service provided for is, *under the circumstances, reasonable and appropriate to the case,* it is 'due process of law,' * * *." (Italics supplied.)

The court then went on to find that the service under the circumstances of that case was reasonable and appropriate.

The second case was that of Thomas v. Hector Const. Co. 216 Minn. 207, 12 N. W. (2d) 769. In that case this court said that, when the statute authorized service on the secretary of state as a "substitute" for personal service upon private domestic corporations in cases where such corporations have no officers who can be found in the state upon whom service can be made, such service upon the secretary of state is justified upon the ground that it is the most appropriate and likely means of communication to the corporation of notice of commencement of the action.

It is of course an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality that notice

be given reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action to afford them opportunity to present their objections. Mullane v. Central Hanover Bank & Trust Co. 339 U. S. 306, 70 S. Ct. 652, 94 L. ed. 865.

We come now to a consideration of the factors bearing upon the question of whether or not the action taken by defendant was reasonable and appropriate when he commenced the three actions to determine adverse claims in 1945. It must be noted that we are dealing with an expired corporation that has long since ceased to operate as an active business and with a situation where neither the defendant nor his attorneys deny that they were fully aware of all the factors giving rise to the claim of the plaintiff.

It appears from the record that the defendant sometime in 1939 had been served with a lis pendens executed in the name of the McNiven Land Company by C. E. Berkman. It is his testimony that it was then he learned of C. E. Berkman's presence in this involved situation. It further appears that he had recognized C. E. Berkman's claims to the land in question as president of the McNiven Land Company. The defendant and his attorney were also aware of the fact that C. E. Berkman had executed a repurchase agreement in the name of the McNiven Land Company to some or all of the lots involved.

It is further clear from the record that the adverse interests of defendant and C. E. Berkman as the claimed sole representative of the McNiven Land Company had tied up the sale of the land for a considerable period of time. It may be stated that from 1939 until May 1945 negotiations had been carried on between defendant and C. E. Berkman. Part of these negotiations were had while Berkman lived at Chisholm and part were had through the mails after Berkman had moved to California. These negotiations took the form of attempting to get quit-claim deeds from C. E. Berkman; bargaining with respect to who was going to buy out the other's interest; and negotiations involving the vacation of judgments in two earlier actions to quiet title commenced by defendant. It is also significant that defendant testified that his partner (Mr. Ranta) had made an

agreement with C. E. Berkman whereby he (Ranta) would sell some of the property here involved for Berkman as his agent.

It is the position of defendant in this action that when the second set of actions to quiet title were commenced he was under no obligation to name the Berkmans or in any manner to notify them of the commencement of those actions. In this respect defendant's attorney who prosecuted those actions testified in the action at bar as follows:

"Q.   To whom did you expect the Secretary of State to give notice of this?

"A.   That is what I felt the Secretary of State would do and perform.

"Q.   To whom did you feel he would give notice to anybody interested, how was he going to get notice to anybody?

"A.   That is what we have been complaining about in this matter. When people have land and hold it in the name of a company, if they are satisfied to leave the company stand like this with all of the officers dead and then go off to California, and attempt to claim afterwards it wasn't the company at all but simply an individual, I don't think that is a proper situation. It wasn't we that run off and left it that way.

"Q.   You didn't think there was any duty resting on you knowing Berkmans claimed an interest in themselves or the McNiven Land Company to notify them in some way you were bringing these suits? You served on the Secretary of State knowing he could serve no one—

"A.   We did whatever the law required."

It is of course true that the Berkmans were lax in not taking steps to have the record title changed from the corporation to themselves. However, such reasoning could not apply to persons who were completely aware of the existing situation. This is clearly not a situation where strangers who had no knowledge or notice of the Berkman's position in this matter had brought actions to quiet title. Only such persons could claim the right to challenge Berkman's inaction here.

As far as the defendant is concerned close negotiations had gone on with C. E. Berkman for a period of six years as the adverse party to a disputed claim to real estate, and it is sufficiently clear that it would have been an extremely simple matter when the actions involved were commenced to name Berkman as a party so that his name would have appeared in the publication of summons; to have mailed him a copy of the summons; or at least to have given the secretary of state the name and address of C. E. Berkman and to have apprised him of the fact that Berkman was the only known person claiming to be a representative of the McNiven Land Company. To have done less in the commencement of those actions under the circumstances we are confronted with in this case was unreasonable and inappropriate and did not comply with our conception of due process of law.

The defendant, however, takes the position that under the law of the State of Minnesota—

"* * * there is no duty upon a plaintiff who desires to quiet title to land which he has purchased from a corporation which has failed to give him a conveyance of it to locate the names of the stockholders in that corporation where the statutes of Minnesota have provided for a method for the service of summons upon such a corporation."

Such a proposition is, of course, true. However, it is our opinion that under the facts of this case we have a situation which does not come within such a simple generalization.

We feel that the reasoning of the court in Gilbreath v. Teufel, 15 N. D. 152, 107 N. W. 49, is peculiarly appropriate to the case at bar. That case also involved an action to determine adverse claims. The title to the land involved stood in the names of two deceased persons whose estates had not been probated. The plaintiff in that case knew that these persons were deceased and had negotiated with their heirs to settle the conflicting claims. Action was commenced by technical compliance with the statute and service was had by sending copies of the summons and complaint to the last known address of the deceased persons. No notice was given to the heirs

other than to name unknown heirs in the publication. Default judgments were then obtained quieting title in the plaintiff. The Supreme Court of North Dakota in that case stated (15 N. D. 156, 107 N. W. 51):

"It is contended that the proceedings are in all things in strict compliance with the statutory provisions regulating the procedure in this form of action. We deem it entirely immaterial under the circumstances of this case whether the proceedings did or did not comply in form with the statute; and it is therefore unnecessary to discuss that question. Assuming that the proceedings did formally comply with the statutory requirements, and assuming that such procedure could be held to be 'due process,' and would be valid as against collateral attack, the fact remains that the statutory forms were abused. Whether any actual deceit was intended or not, the effect of the procedure followed was a fraud on the court as well as upon the defendants."

■ While it is our opinion that the trial court erred in finding that commencement of the second set of actions to determine adverse claims was legal and valid we must further consider the court's conclusion refusing to vacate the judgments.

As stated above, the actions at bar were brought under M. S. A. 548.14. This statute reads as follows:

"Any judgment obtained in a court of record by means of perjury, subornation of perjury, or any fraudulent act, practice, or representation of the prevailing party, may be set aside in an action brought for that purpose by the aggrieved party in the same judicial district within three years after the discovery by him of such perjury or fraud. In such action the court may either enjoin the enforcement of the judgment or command the satisfaction thereof, may compel the party procuring the same to restore any property received by virtue thereof, and may make such other or further order or judgment as justice shall require; but no right or interest of a third party acquired under such judgment in good faith, and without knowledge of the wrong complained of, shall be affected by the

action herein provided for; provided, if during the pendency of such action the enforcement of such judgment or an action thereon shall become barred by the statute of limitations, and such judgment is sustained, the same may be enforced, or an action commenced thereon, within one year after such action is finally determined."

An action brought under this section is equitable in its nature and governed by equitable principles. Bloomquist v. Thomas, 215 Minn. 35, 9 N. W. (2d) 337. It is to be noted that the statute itself provides that no right or interest of a third party acquired under such judgment in good faith and without knowledge of the wrong complained of shall be affected by the action provided for. Under the record here the rights of innocent third parties have so intervened that we must hold with the trial court that it is impossible to vacate the judgments complained of and thus make insecure the titles held by such innocent third persons; however, § 548.14 does provide that the court, among other things, may make such other or further order or judgment as justice shall require.

Our court has held under this statute that an action to set aside a judgment under this section is one of an equitable nature, and the court has the power, and it is its duty, to award such relief as the facts may require; but the right to have a judgment obtained by such means set aside is not an absolute one, but depends upon the particular circumstances of each individual case. Geisberg v. O'Laughlin, 88 Minn. 431, 93 N. W. 310.

Therefore, while we feel that under the circumstances here the judgments complained of cannot be vacated, it is our opinion that the plaintiff in this case is not without a remedy. We therefore remand this case to the trial court for a trial on the merits to determine who in fact owned the property involved in 1945. If the plaintiff cannot establish a superior right to this property he has not been injured in any way by the failure of the defendant to do more in the commencement of the actions brought in 1945. However, if he can establish in a trial on the merits his ownership of the property, he may then go forward and establish the amount of damages sustained by reason of being deprived of his property.

Remanded for further proceedings in accordance with this opinion.