# RAYMOND F. JOHNSTON, JR. v. JEAN G. JOHNSTON.

158 N. W. (2d) 249.

April 5, 1968—No. 40,568.

*Charles A. Cox,* for appellant.
*Lindquist, Magnuson & Glennon,* for respondent.

ROGOSHESKE, JUSTICE.

Defendant appeals from an order partially denying a motion to vacate a divorce decree for fraud. The order vacated only those portions of the decree relating to support, alimony, and division of the property, and set these issues for trial in Dakota County.

The action for divorce by plaintiff-husband against defendant-wife was commenced on June 17, 1965, by service of the summons and complaint upon defendant by plaintiff's attorney. Service was made within minutes after a conference between the parties and plaintiff's attorney at which the parties executed a "written stipulation" which established their agreement to "separate legally" and, "[i]n the event that a legal separation does not work out," set forth their agreement as to custody, support, alimony, and a division of property should a default divorce be granted to plaintiff. An absolute divorce decree was obtained by plaintiff on July 16, the 29th day following commencement of the action. It was submitted as a default matter pursuant to the stipulation.

Thereafter, defendant, claiming that she was unaware of the divorce decree until January 6, 1966, moved to vacate the default judgment. Her motion, set for hearing on April 1, 1966, was served by mail upon plaintiff's attorney on March 15. Before the motion was heard, plaintiff remarried on March 19, having obtained a license therefor on March 2. This remarriage, he claims, was prior to any knowledge of defendant's motion. Following a comprehensive hearing on April 1, at which affidavits and oral testimony of the parties and their witnesses were submitted, the court entered findings on September 1, 1966, supporting its order setting aside all portions of the decree except that part granting plaintiff a divorce. Included are findings to the effect that plaintiff resided in Dakota County when the action was instituted; that defendant had no actual knowledge of the decree until January 6, 1966; that plaintiff's remarriage was without prior knowledge of defendant's motion; and that defendant misunderstood the nature of the proceeding and should be relieved of the effect of the decree with respect to support, alimony, and a division of the property.

On this appeal, defendant makes three claims: (1) The decree of divorce was obtained by fraud and therefore must be vacated in its entirety;

(2) the trial court lacked jurisdiction to grant a default divorce on the 29th day following commencement of the action; and (3) the action was improperly venued in Dakota County and further proceedings should be venued in Hennepin County.

Upon oral argument, it was revealed that the marriage between plaintiff and defendant is now dissolved beyond redemption. It was conceded that defendant does not seriously assert a desire to defend for the purpose of seeking a reconciliation with her former husband. What she seeks is an opportunity to litigate the questions of support, alimony, and property division unhampered by the force of the divorce decree. Disclaiming any malicious motives toward plaintiff and his former attorney, she argues that unless the decree is vacated in its entirety she will not be able to obtain as favorable a redetermination of these allowances as would be possible were the default decree to govern the issue of fault. Plaintiff's present counsel, with commendable candor, expresses plaintiff's willingness to litigate the question of culpability upon further proceedings so far as evidence relating to that issue might affect a determination of the issues restored by the order of the trial court.

In view of these concessions, the undisputed innocence of any wrongdoing on the part of plaintiff's second wife, and other circumstances of the case, including a careful review of the evidence upon which the default decree was based, we are not persuaded that the disposition ordered by the trial court was unwarranted. We reach this conclusion despite the many inferences which could be drawn from this record that plaintiff and, particularly, his former counsel engaged in reprehensible conduct which would not only support a finding of fraud upon the administration of justice but which reflects discredit upon the high standards of professional conduct required of a member of the bar. However, the question of whether to set aside a final decree of divorce remains one peculiarly within the discretion of the trial court under the circumstances of each case. Berg v. Berg, 227 Minn. 173, 34 N. W. (2d) 722.

At the time of the hearing on the complaint below, the parties were both 38 years old. They had two children, Ruth, born in 1953, and Darryl, born in 1957. In accordance with the stipulation, custody of the two children was originally placed with defendant, but the son is now in the cus-

tody of plaintiff and his present wife. The proceeding resulting in the default decree originated in June 1965 when plaintiff, having determined that living with defendant had become intolerable (principally because of the manner in which she maintained their home), informed defendant that he was leaving her, removed himself from their home, and began his attempts to obtain her agreement to a stipulation for a default divorce. Because of her unwillingness to meet at plaintiff's attorney's office, they arranged a meeting at the Sheraton-Ritz Hotel in Minneapolis. At that time, because of defendant's insistence, a stipulation which had been prepared before the meeting was modified to provide that the parties would agree to live separately and apart "in order to give both parties an opportunity to re-evaluate their marriage." As thus modified, the stipulation, which referred to the parties as plaintiff and defendant and which they signed, provided:

"In the event that a legal separation does not work out between the parties; then the defendant does hereby consent to an action to be brought by the plaintiff for a legal separation and/or an absolute divorce to be heard as a default matter * * *."

In that event, the stipulation then provided that the plaintiff would pay $200 a month for the support of the children; that defendant would have custody of the children with visitation rights to plaintiff on legal holidays, the children's birthdays, 2 weeks during the summer, and 2 weeks during the winter; that defendant would keep the funds then in the saving and checking accounts (which amounted to approximately $1,000); that she would have the right to use the home and furnishings plus $100 a month alimony, of which $76 was to be paid on the mortgage and $24 directly to her; and that she would retain a 1956 Pontiac automobile.

The stipulation as modified upon defendant's insistence therefore clearly contemplated a trial period of separation, during which time an attempt would presumably be made to accomplish a reconciliation. In spite of the modification, plaintiff's attorney, immediately upon completion of the meeting at the hotel, served the defendant with the summons and complaint. The divorce was granted 29 days thereafter, and for reasons wholly unexplained, the affidavit by plaintiff's attorney asserting defend-

ant's failure to answer and default was executed and acknowledged on June 28, 1965, 11 days after commencement of the action. A copy of the decree addressed to defendant was mailed by the clerk of court to the Sheraton-Ritz Hotel on July 28, but was returned as "Not at Sheraton-Ritz Hotel." Plaintiff, however, asserted by affidavit that within 3 weeks after the decree was entered he delivered a copy of it to defendant along with his August check for alimony and support. This assertion was not challenged upon cross-examination when he testified at the hearing. He also claimed that he had introduced defendant on many occasions thereafter as his ex-wife.

The trial court, however, found that defendant did not have actual knowledge of the divorce decree until January 6, 1966. It was also found that defendant "misunderstood the nature of all proceedings prior to the divorce granted herein although she had ample opportunity to obtain counsel on the matter." The trial court concluded that "under all facts herein the mistake and neglect of defendant herein was excusable and she should be relieved of the effect of the decree with respect to support, alimony and division of the property of the parties."

The fraud asserted by defendant, to the extent that it exists, must be the act of serving defendant in the default action in violation of the express terms of the modified stipulation. Any determination that fraud exists here as a matter of law in the face of the trial court's implied finding that no fraud was perpetrated must be made in the context of our cases which require a clear showing that the trial court has abused its discretion. Berg v. Berg, *supra;* Wilhelm v. Wilhelm, 201 Minn. 462, 276 N. W. 804; Scribner v. Scribner, 93 Minn. 195, 101 N. W. 163. The determination must also be made in the light of the fact that one party has remarried. The only case reviewed by this court in which a divorce was set aside in the face of a remarriage was that of Bloomquist v. Thomas, 215 Minn. 35, 9 N. W. (2d) 337. However, in that case, by the time the action to set aside the divorce had been brought the husband had drowned and the two surviving wives were disputing only their claims to his estate. Here, vacating the decree in its entirety could not conceivably restore a marriage nor likely advance the welfare of the children. Rather, it could expose both plaintiff and his new wife to bigamy

charges and upset a marriage which has been represented as "going very well" for a year and a half. We are confident that this ought not be done except in the most extreme case. Viewing the interests of the parties and the case as a whole, we are not convinced that this is such a case, especially when due weight is given to the findings of the court (who observed the parties and their demeanor) that the default decree was obtained because of defendant's misunderstanding and excusable neglect, "although she had ample opportunity to obtain counsel."

There is no doubt, nonetheless, that the conduct of plaintiff and his attorney in serving process immediately after the stipulation was signed in violation of its express terms and in the subsequent swift perfection of the divorce with all the attendant circumstances set forth above could support a finding of fraud. Such a finding under the circumstances of this case would not, however, necessarily eliminate the discretionary power of the trial court to refuse to vacate the decree in its entirety. Since the jurisdiction of the district court in divorce actions is equitable, relief may be awarded as the facts in each particular case and the ends of justice may require. The right to set aside a judgment obtained by such means as those here employed is not an absolute one, and whether in any particular case a judgment ought to be unconditionally vacated for the fraud of the prevailing party must depend upon the particular circumstances shown. Geisberg v. O'Laughlin, 88 Minn. 431, 93 N. W. 310; Berkman v. Weckerling, 247 Minn. 277, 77 N. W. (2d) 291; Johnson v. Johnson, 243 Minn. 403, 68 N. W. (2d) 398. Since the court's findings are adequately supported by the record, we find no abuse of discretion in its refusal to vacate the decree in its entirety.

In affirming, we direct, in accordance with the express consent of the parties, that the court receive evidence on the issue of culpability so far as it may bear upon the issues to be litigated. While the court may consider the comparative fault of the parties as an element in fixing the amount of alimony and division of property (Webber v. Webber, 157 Minn. 422, 196 N. W. 646), we caution that such awards are made not as a penalty but as a substitute for the husband's duty to support his wife and should be resolved primarily upon evidence of her needs and his ability to pay. Swanson v. Swanson, 233 Minn. 354, 46 N. W. (2d) 878.

Defendant's assertion that the trial court did not have jurisdiction to grant a default divorce until after the 30-day answering period provided by Minn. St. 518.12 is without merit. The statute merely fixes the time in which to answer, and a default entered before expiration of that time would be a significant factor to consider upon a motion to reopen. Like the provisions relating to venue, the statute fixing the time is not jurisdictional.[1] Were the defendant's position the law, we suspect the validity of many default divorce cases might be in jeopardy. The fact that the statute once provided that the court could set the time to answer where personal service was had out of state is indicative of the nonjurisdictional nature of the present provision. Minn. St. 1941, § 518.12. Similarly, we find no proper basis to disturb the trial court's factual determination of the venue of the action. 6 Dunnell, Dig. (3 ed.) § 2788; Buckheim v. Buckheim, 231 Minn. 333, 43 N. W. (2d) 113.

Affirmed without costs or disbursements to respondent.