In re the Marriage of Twyla G.
KARYPIS, petitioner,
Appellant,

v.

Anastasios G. KARYPIS, Respondent.

No. C9–90–77.

Court of Appeals of Minnesota.

July 10, 1990.

Review Denied Sept. 14, 1990.

Mark A. Gray, Bruno & Gray, Minneapolis, for appellant.

Alan J. Albrecht, Skaar & Richards, P.A., Buffalo, for respondent.

Considered and decided by KALITOWSKI, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

FOLEY, Judge.

In this post-dissolution decree action, minor children of the parties left the home of the custodial parent to live with the parent who had a child support obligation and the obligor stopped making child support payments. Appeal is made from a trial court finding that the child support obligation for the children living with the obligor had been satisfied. Challenge is also made to the trial court's denial of motions regarding life insurance, health insurance coverage and attorney fees. We affirm in part, reverse in part and remand.

## FACTS

Appellant Twyla G. Karypis and respondent Anastasios G. Karypis were married in 1966. Four children were born of the marriage: Anastasia, born December 12, 1969, age 20; Daphne, born June 24, 1971, age 18; Margarita, born September 6, 1975, age 14; and Alexander, born August 3, 1977, age 12.

The parties' marriage was dissolved by decree on August 14, 1984. Under the terms of the decree, Twyla was given custody of all four children. Anastasios was to pay child support to Twyla of $100 per month for each child until the child either became 18 years-of-age or graduated from high school.

In September of 1989, Twyla moved the court for judgment against Anastasios for child support arrearages and relief in connection with life and health insurance and for attorney fees.

There is no dispute the oldest child, Anastasia, started living with Anastasios on March 1, 1987. Anastasios did not pay child support to Twyla for Anastasia on or after March 1, 1987. Anastasia turned 18 years-of-age on December 12, 1987.

Nor is there a dispute the second oldest child, Daphne, moved in with Anastasios on August 1, 1987. Anastasios did not pay child support to Twyla for Daphne on or after August 1, 1987. Daphne turned 18 years-of-age on June 24, 1989.

It is also undisputed Margarita moved in with Anastasios on November 1, 1987, and lived with Anastasios through June, 1989, moving back with Twyla in July, 1989, when she was 14 years-of-age. Anastasios did not pay child support to Twyla for Margarita on or after November 1, 1987.

The parties agree the youngest child, Alexander, now age 12, has always lived with Twyla. Twyla claimed back child support for him for 21 months from December, 1987 through August, 1989.

Twyla further claimed Anastasios had paid no child support to Twyla for Margarita and Alexander for September, 1989.

Anastasios admitted he paid no child support in December, 1987 and for the year 1988. The trial court found Anastasios did not pay any child support to Twyla in 1989 through August. The trial court concluded Anastasios had paid

in-kind support for Anastasia, Daphne and Margarita, during the time they have been in his actual physical custody and owes no additional support to Twyla for that period of time.

The trial court found Anastasios had not paid Twyla for support for Alexander "although he was capable of paying that support." The trial court ordered Twyla should have judgment against Anastasios for $2,100 back support for Alexander for December, 1987 through August, 1989. The trial court did not order back support for Alexander for September, 1989.

The trial court also failed to find, as was undisputed by the parties, that Margarita had resumed living with Twyla in July, 1989. The trial court did not order back support for Margarita for July, August or September, 1989.

Twyla also told the trial court by way of affidavit that she no longer had the job she had at the time of the decree which gave her dependent health care coverage for the children. She asked that Anastasios be ordered to assume the burden of providing that coverage for the children. Anastasios did not respond to the motion.

Additionally, Twyla asked that Anastasios be ordered to continue making payments on a life insurance policy pursuant to the decree. Twyla asked that she be paid back for $75.25 she paid to keep the policy in effect through August, 1989.

Anastasios told the trial court he had not allowed life insurance to lapse, but had "merely purchased a similar policy, only changing the beneficiaries of said policy." A memorandum filed by Anastasios' attorney represents the beneficiary designation was changed from Twyla to the four children. Anastasios did not respond to Twyla's claim she had made a premium payment of $75.25.

The trial court summarily denied Twyla's motions as to the life insurance and medical insurance without making any findings or conclusions. Her final motion for attorney fees was also denied by the trial court.

Twyla now appeals, alleging the trial court erred in determining the amount of child support owed to her by Anastasios, denying her motion for judgment against Anastasios for failure to pay life insurance premiums, denying her motion to amend the decree to order Anastasios to obtain

health insurance for the children and denying her motion for attorney fees.

## ISSUES

1. Did the trial court err in determining the amount of child support owed to Twyla by Anastasios?

2. Did the trial court err in denying Twyla's motion for judgment against Anastasios for failure to pay life insurance premiums?

3. Did the trial court err in denying Twyla's motion to amend the decree to require Anastasios to obtain health insurance for the children?

4. Did the trial court err in denying Twyla's request for attorney fees?

## ANALYSIS

■ 1. Twyla argues the trial court erred in determining the amount of child support owed to Twyla by Anastasios.

It is well settled * * * the trial court is accorded broad discretion with respect to * * * provision for the custody and support of the children of the parties. There must be a clearly erroneous conclusion that is against logic and the facts on record before this court will find that the trial court abused its discretion.

*Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984) (citations omitted). Minnesota law provides:

A modification of support * * * may be made retroactive only with respect to any period during which the petitioning party has pending a motion for modification but only from the date of service of notice of the motion on the responding party.

Minn.Stat. § 518.64, subd. 2 (1988) (as correctly set forth in 1988 Minn. Laws ch. 532, § 14).

■ Anastasios contends this is not a "modification" of child support within the meaning of Minn.Stat. § 518.64, subd. 2. He acknowledges appellate disapproval of a trial court's attempt to avoid Minn.Stat. § 518.64, subd. 2 by characterizing a retroactive change as "forgiveness of arrearages" rather than "retroactive modification".

*See Bruner v. Bruner,* 429 N.W.2d 679, 682 (Minn.App.1988), *pet. for rev. denied* (Minn. Nov. 30, 1988).

Anastasios argues, however, that, in this case, there is no retroactive modification, or even forgiveness of arrearages, because what the trial court did was find that he had "satisfied" his child support obligation by providing a home, care and support for the children when they were living with him. The trial court reasoned as follows:

[Anastasios'] contributions can not be characterized as occasional gifts or supplemental aid to [Twyla], because [Twyla] has not had actual physical custody of those three children.

The expenses of [Anastasios] for the children's benefit are significantly above the payments ordered under the Judgment and Decree. [Anastasios] should not be forced to pay arrears when essentially payment has been made. To decide otherwise would grant [Twyla] a windfall * * *. The Court, therefore, is not retroactively forgiving arrears owed by [Anastasios], rather it merely recognizes the fact that [Anastasios] has satisfied his obligation.

■ We agree. It is undisputed Anastasios was providing the care and support for the children living with him. Under the circumstances of the case, this resolution is a practical way to prevent inequity. A trial court does not lose authority to do equity in family law unless there is a pure question of law. A district court has equitable jurisdiction in dissolution actions, and "relief may be awarded as the facts in each particular case and the ends of justice may require." *Johnston v. Johnston,* 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968); *see also Scott v. Scott,* 373 N.W.2d 652, 654 (Minn. App.1985). In reaching this decision, we follow the holding of *Trainotti v. Trainotti,* 261 Cal.Rptr. 36, 38, 212 Cal.App.3d 1072, 1074–76 (1989) (a prohibition against retroactive modification is not violated by a finding that an obligor has satisfied an obligation imposed by the original order).

Twyla has not argued it is inequitable to her to find the child support obligation was

satisfied by the children living with Anastasios. Furthermore, there is no evidence any third party is harmed by this decision. In particular, we note there is no evidence any governmental entity has an interest in collecting past child support.

In addition to arguing retroactive modification is barred, Twyla claims informal arrangements to modify custody are not favored. She relies on *Dent v. Casaga*, 296 Minn. 292, 296, 208 N.W.2d 734, 737 (1973) and *Lindberg v. Lindberg*, 379 N.W.2d 575, 577 (Minn.App.1985), *aff'd* 384 N.W.2d 442 (Minn.1986). Subsequent to those cases, however, the supreme court has said that "private agreements between parents with respect to family living arrangements should be encouraged." *Tell v. Tell*, 383 N.W.2d 678, 682 n. 2 (Minn.1986).

We do find, however, that the trial court erred in only ordering $2,100 back support for Alexander and none for Margarita. Judgment should be entered in favor of Twyla against Anastasios for an additional $100 support for Alexander for the month of September, 1989 and an additional $300 for Margarita for the months of July, August and September, 1989.

2. Twyla argues the trial court erred in denying her motion for judgment against Anastasios for failure to pay life insurance premiums. We find judgment should be entered in favor of Twyla against Anastasios for the $75.25 she paid for the premium.

3. Twyla contends the trial court erred in denying her motion to amend the decree to require Anastasios to obtain health insurance for the children. The trial court did not address this issue. On remand, the trial court should revisit it. In this day of high medical costs, every effort should be made to obtain health insurance for the minor children if it is within the parties' abilities.

4. We find the trial court did not abuse its discretion in denying Twyla's request for attorney fees. *See* Minn.Stat. § 518.14 (1988).

### DECISION

We affirm the trial court's finding that Anastasios' child support obligations were satisfied for minor children when they were living with him. We also affirm the trial court's finding that Anastasios owed Twyla $2,100 for back child support for Alexander. We reverse the trial court to the extent it failed to order back child support for Alexander and Margarita for a total of $400, and judgment should be entered in Twyla's favor for that amount. We also find judgment should be entered in Twyla's favor in the amount of $75.25 she paid for the life insurance premium Anastasios was obligated to pay under the dissolution decree. We remand to the trial court for it to revisit the issue of health insurance for the minor children. Finally, we affirm the trial court's denial of Twyla's motion for attorney fees.

Affirmed in part, reversed in part and remanded.