*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-1363**

In re the Marriage of:
Martha Jean Abbott, petitioner,
Appellant,

vs.

James William Abbott Ladner,
Respondent.

**Filed August 11, 2014**
**Affirmed**
**Hooten, Judge**
**Concurring specially, Huspeni, Judge**[*]

Hennepin County District Court
File No. 27-FA-06-9088

Todd R. Haugan, Haugan Law Office, Ltd., Wayzata, Minnesota (for appellant)

Denis E. Grande, DeWitt, Mackall, Crounse & Moore, S.C., Minneapolis, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Hooten, Judge; and Huspeni, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant-wife challenges the district court's denial of her motion to modify temporary spousal maintenance, arguing that the district court erred by determining that maintenance cannot be modified where her husband offset maintenance payments with her debt. We affirm.

## FACTS

Appellant Martha Jean Abbott and respondent James William Abbott Ladner divorced following a trial in March 2008. In the judgment and decree, the district court ordered respondent to pay appellant $4,100 per month from May 1, 2008 until May 1, 2009, and $1,600 per month from June 1, 2009 until June 1, 2011. The decree stated that "payment of . . . spousal maintenance is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation." The decree contains no provision reserving the issue of spousal maintenance after the cessation of payments in June 2011.

Respondent was employed during the marriage and received stock options as part of his compensation. In the decree, certain of respondent's stock options were allocated to appellant. Appellant was granted the right to request that respondent exercise those options and pay the resulting proceeds to her. The decree required that any increase in respondent's tax liability as a result of appellant's request to exercise the options was to be paid by appellant "within ten (10) days of the filing of [respondent's] individual income tax returns, or the April 15th due date for that return, whichever is sooner."

In October 2009, appellant requested a stock-option exercise and received $87,962.90 in proceeds as a result of the transaction. Respondent incurred $6,333 in additional tax liability when he filed his tax returns in early 2010. On February 8, 2010 he requested that appellant pay the tax liability. He repeated this request several times throughout 2010. Appellant did not pay the tax liability. On March 17, 2011, respondent e-mailed appellant, stating that, if appellant did not respond by April 1, 2011 with a plan to pay her debt, he intended to satisfy the debt by withholding his remaining three spousal-maintenance payments for April, May, and June 2011. Appellant did not respond or otherwise object to the e-mail. Respondent withheld $4,800 in maintenance payments. Appellant brought no motions in district court to enforce the payment of the remaining maintenance until June 14, 2012, almost 15 months after respondent informed appellant of his plan to offset. Appellant also moved the district court to extend or modify respondent's spousal-maintenance obligation.

The parties agreed that the district court should address whether it still had jurisdiction to modify maintenance after the expiration of the maintenance term. The district court determined that "the evidence suggests that [respondent] does not owe any outstanding maintenance" because the last three months of maintenance payments were "properly offset by amounts [appellant] acknowledges she owed [respondent]." The district court also found that the offset did not offend the prohibition in the decree forbidding payments to be substituted with "gifts or making purchases of food, clothing and the like." The district court determined that it was "without jurisdiction to modify or extend maintenance because [respondent's] obligation to pay maintenance terminated

3

more than one year before [appellant's] motion was filed." All other issues raised in the parties' motions were resolved in a subsequent order, and this appeal resulted.

## D E C I S I O N

A district court has broad discretion in decisions regarding spousal maintenance, and we review the district court's maintenance decision for an abuse of discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). The offsetting of maintenance arrearages to balance debt between parties in a family law proceeding is within the district court's discretion. *See Amundson v. Amundson*, 414 N.W.2d 473, 476 (Minn. App. 1987) (holding that the district court did not abuse its discretion by offsetting temporary-maintenance arrearages against an inequitable allocation of marital debt to the obligor). A district court abuses its discretion regarding maintenance if its findings of fact are unsupported by the record or if it improperly applies the law. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 & n.3 (Minn. 1997).

Under Minn. Stat. § 518A.39, subd. 1 (2012), "After an order . . . for maintenance or support money, temporary or permanent, . . . the court may from time to time, on motion of either of the parties, . . . modify the order respecting the amount of maintenance or support money . . . ." Where there is no existing spousal-maintenance obligation and the district court has not reserved "jurisdiction" over spousal maintenance, the district court has no authority to address the issue. *Eckert v. Eckert*, 299 Minn. 120, 125, 216 N.W.2d 837, 840 (1974). "The rationale for [this] rule . . . is that there can be no modification of something . . . that has ceased to exist." *Id.*

4

Here, the district court determined that respondent "does not owe any outstanding maintenance" because the last three months of payments were "properly offset by amounts [appellant] acknowledges she owed [respondent]." Appellant argues that (1) other debts cannot be used to offset spousal maintenance payments because they are different "currencies"; (2) the offset was improper because the decree prohibits payment of maintenance in the form of gifts or the "purchases of food, clothing and the like"; and (3) the offset was improper because at the time of the motion, she subjectively believed that respondent owed her more money than she owed him. We are not persuaded by these arguments.

When respondent failed to pay spousal maintenance through a method in accordance with the divorce decree, he was, unilaterally and in direct defiance of the district court, modifying the spousal-maintenance order. The legislature has clearly expressed disapproval of such conduct by providing that such conduct may subject a party to civil contempt proceedings and imprisonment. *See* Minn. Stat. § 588.01, subd. 3(3) (2012) (providing that a court may find a person in civil contempt of court for "disobedience of any lawful judgment, order, or process of the court"); Minn. Stat. § 588.12 (2012) (providing that "[w]hen the contempt consists in the omission to perform an act which is yet in the power of the person to perform, the person may be imprisoned until the person performs it, and in such case the act shall be specified in the warrant of commitment"). Accordingly, we cannot condone respondent's use of self-help to satisfy appellant's tax-liability debt by offsetting maintenance payments. Respondent would have been well-advised to move the district court for relief rather than engaging in self-

5

help.  We caution that a family law litigant who engages in self-help proceeds at his or her own risk.

But despite respondent's cavalier conduct, we conclude that the district court did not abuse its discretion by determining that respondent's maintenance obligation was properly offset by appellant's tax-liability debt.  Appellant had the unilateral power to force respondent to incur an additional tax liability by requesting a stock-option exercise and to benefit from such a transaction.  Appellant was clearly and admittedly responsible for paying the tax liability, and she violated the decree not only by failing to pay it within the 10-day deadline, but by failing to pay it at all.  Respondent presented undisputed evidence that he repeatedly requested appellant throughout 2010 and 2011 to pay the tax liability.  She did not pay.  In March 2011, respondent notified appellant that if she did not pay the tax liability, he would satisfy her debt by not making his remaining three maintenance payments under the decree.  No evidence supports that appellant ever objected to the proposed offset.  And when respondent proceeded to withhold those payments, appellant did not move the district court for relief of any kind until over a year after the maintenance term had expired, almost 15 months after respondent proposed the offset, and over 28 months after respondent first asked appellant to pay her debt.

Moreover, the district court had discretion to determine whether respondent's self-help actions were an improper form of maintenance payments under the decree, which prohibited "gifts or making purchases of food, clothing, and the like" as replacements for maintenance payments.  There is no evidence that respondent paid the tax liability as a gift to appellant, and the decree does not address offsets where respondent has been

6

forced to pay a legal obligation that appellant was court ordered to assume. Finally, appellant cites no authority supporting her argument that her subjective belief is relevant in deciding this issue.

Given our deferential standard of review and the unique circumstances of this case, we conclude that the district court did not abuse its discretion by determining that respondent's offset of maintenance payments was proper and that his maintenance obligation ceased to exist upon the offset. Accordingly, under *Eckert*, there is no existing obligation to modify, and the district court did not err by denying appellant's motion to modify or extend maintenance. *See* 299 Minn. at 125, 216 N.W.2d at 840.

In light of our decision, we need not address appellant's argument that the existence of maintenance arrears owed her by respondent conferred authority on the district court to modify maintenance. *See Reed v. Univ. of N.D.*, 543 N.W.2d 106, 109 (Minn. App. 1996) (stating that an issue need not be addressed on appeal where an alternative basis supports affirmance), *review denied* (Minn. Mar. 28, 1996). The concurrence urges us to reach this issue because the parties and the district court addressed the issue, and because the issue will almost certainly arise again. But a justiciable controversy does not exist if a claim "present[s] hypothetical facts that would form an advisory opinion." *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617−18 (Minn. 2007). And "[w]e do not issue advisory opinions, nor do we decide cases merely to establish precedent." *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 439 (Minn. 2002). The existence of maintenance arrears here is hypothetical. And the issue of whether such arrears give the district court authority to modify maintenance is a matter of

7

first impression. We do not find it prudent to issue an advisory opinion based on a hypothetical and to establish precedent on a legal issue that is not dispositive of this case.

**Affirmed.**

**HUSPENI**, Judge (concurring specially)

I concur in the analysis and result of the majority opinion that the decision of the district court to offset arrears was not an abuse of discretion.

I write separately to emphasize that in order to serve the interests of husbands and wives in dissolution actions, and the interests of district courts tasked with decision-making in those cases, this court would have been well-advised to reach the second issue raised in this case, to wit: whether the presence of unpaid spousal-maintenance arrears gives the district court authority to hear a motion by a rehabilitative-maintenance obligee to modify or extend the obligor's spousal-maintenance obligation after the expiration of the maintenance term. *See* Minn. Stat. § 518A.39, subd. 2 (2012) (regarding modification of spousal maintenance obligations). This issue was argued thoroughly and persuasively by the parties in district court, addressed and resolved by the district court in a well-reasoned order, and is now briefed on appeal. It is also an issue that will almost certainly arise again in the context urged by appellant here: as a natural extension of *Moore v. Moore*, 734 N.W.2d 285, 288-89 & n.2 (Minn. App. 2007) (ruling that, absent a reservation of authority over maintenance, a maintenance obligation expires and a district court loses authority to modify maintenance when the last payment is made on the schedule setting that obligation, but declining to address when a district court loses authority to modify maintenance in certain other circumstances), *review denied* (Minn. Sept. 18, 2007).

This court, in reaching the second issue, should affirm the district court and rule that the existence of arrears does not allow modification of a rehabilitative maintenance

CS-1

award that has ceased to exist. The equitable powers of the district court in family matters are both inherent to the district court and extremely broad. *See, e.g.*, *Holmberg v. Holmberg*, 588 N.W.2d 720, 724 (Minn. 1999) ("Family dissolution remedies, including remedies in child support decisions, rely on the district court's inherent equitable powers."); *Karon v. Karon*, 435 N.W. 2d 501, 503 (Minn. 1989) (noting that the district court is a third party to dissolution proceedings and has the "duty to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all"); *DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 757-58 (Minn. 1981) ("Although dissolution is a statutory action and the authority of the [district] court is limited to that provided for by statute, the district courts are guided by equitable principles in determining the rights and liabilities of the parties upon a dissolution of the marriage relationship."); *Johnston v. Johnston*, 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968) ("Since the jurisdiction of the district court in divorce actions is equitable, relief may be awarded as the facts in each particular case and the ends of justice may require."); *Diedrich v. Diedrich*, 424 N.W.2d 580, 584 (Minn. App. 1988) (applying equitable concept of estoppel to question regarding legal validity of spousal-maintenance agreement); *Rodeberg v. Weckworth*, 409 N.W.2d 57, 59 (Minn. App. 1987) ("[T]here is precedent for retention of equitable jurisdiction for supervisory purposes in family law cases.").

While we need not reach the issue here of whether a district court—either through its own equitable authority or the stipulation of the parties—might incorporate a reservation of authority in the decree to modify the award of rehabilitative maintenance

should the obligor be in arrears at the time the award expires, clearly such a reservation is not present in this case.

I can discern no statutory or caselaw provision that would prohibit the district court from exercising its broad equitable discretion to do what was done in this case. Temporary rehabilitative maintenance continued until June 1, 2011. There was no reservation of authority to modify maintenance beyond that date. *See Eckert v. Eckert*, 299 Minn. 120, 125, 216 N.W.2d 837, 840 (1974) (holding that when there is no existing spousal-maintenance obligation and the district court has not reserved "jurisdiction" over spousal maintenance, the district court has no authority to address the issue). Clearly, *Eckert* and its progeny state that a court cannot modify a rehabilitative maintenance award that has ceased to exist. *See id.* ("[T]here cannot be modification of something that has ceased to exist."). And the existence of arrears should not be utilized as a defibrillator to breathe life into a non-existent award, at least not until the Legislature has affirmatively said so. *See, e.g.*, *Engquist v. Loyas*, 803 N.W.2d 400, 406 (Minn. 2011) (stating that "[b]ecause the Legislature has not acted, we assume that the Legislature has acquiesced in our interpretation" of a statute).[1]

Critically important, a maintenance obligee is not without an avenue by which to enforce a maintenance award. *See* Minn. Stat. §§ 518A.39, subd. 1 (stating that an

---

[1] *Eckert* and *Moore* interpreted Minn. Stat. § 518.64, the predecessor to section 518A.39. *See* 2007 Minn. Laws, ch. 118, § 7 (codified at Minn. Stat. § 518A.39). While the legislature has renumbered the statutory provision governing modification of spousal maintenance, it has not substantively amended that provision in a way indicating that *Eckert* or *Moore* are no longer good law. *See id.* (renumbering section 518.64 and slightly modifying its language).

obligee can bring a motion for contempt to enforce arrears); 548.091, subd. 1 (setting forth methods for enforcement of maintenance judgments); 588.01-.21 (2012) (addressing contempt of court). Those avenues are not only adequate, but also obviate the need, under our current statutory scheme, to extend the life of a rehabilitative maintenance award beyond its stated expiration date in order to allow any unpaid maintenance arrears to be enforced. And this separation between enforcement and modification is consistent with caselaw. *See, e.g.*, *Matson v. Matson*, 310 N.W.2d 502, 506 (Minn. 1981) (discussing situations where district courts may lose jurisdiction to modify child support, while still retaining jurisdiction to enforce outstanding child support arrears); *Dent v. Casaga*, 296 Minn. 292, 295, 208 N.W.2d 734, 736 (1973) (holding that delinquent child support payments cannot be enforced by contempt after the child is emancipated, but an aggrieved party may seek judgment for delinquent payments, and the district court has jurisdiction to enter such a judgment); *Rodeberg*, 409 N.W.2d at 58-59 (explaining that a court of equity retains jurisdiction over a decree for enforcement purposes by analogizing it to "equitable jurisdiction for supervisory purposes in family law cases"). And I note that in this case, the district court increased respondent's child-support obligation after the district court determined it had no authority to modify spousal maintenance.

Finally, it would go against the great weight and unambiguous language of both caselaw and statutes to argue that loss of authority to modify a maintenance award results in loss of authority to enforce that award. To succeed in that argument would be to

astoundingly conflate the very separate concepts of modification and enforcement as they exist in decrees of divorce.