RUTH D. ENGLUND v. PHILIP J. ENGLUND.

175 N. W. (2d) 461.

February 27, 1970—No. 41757.

*Norris J. Skogerboe* and *Harry H. Peterson*, for appellant.
*Quinlivan, Williams, Johnson & Quinlivan*, for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment and amended judgment awarding plaintiff $11,000 in a divorce action.

On November 10, 1962, plaintiff, Ruth D. Englund, and defendant, Philip J. Englund, were married. Ruth was 42 at this time and Philip was 48. It was Ruth's second marriage and Philip's third. Ruth had three children by her first marriage, and Philip had four by prior marriages.

Before the marriage Ruth had a home in Aberdeen, South Dakota, subject in 1964 to a $6,137 mortgage. The home was later sold for $22,000. She also had a vendor's interest in a contract of sale of her deceased husband's lumberyard, valued in 1964 at $78,000. Her other principal assets were $4,900 of Investors Diversified Services stock and South Dakota farmland worth $60,000.

At the time of the marriage, Philip's principal assets were farmland and lake property worth $18,000, stock worth $1,100, and a $35,000 house with an $8,000 mortgage.

On the day of the wedding, Philip and Ruth signed an antenuptial agreement prepared at Ruth's request. Each waived all claim to the other's real and personal property.

Ruth received $254 a month in social security payments for her children and $600 a month from the sale of the lumberyard.

She could keep only $409 of the lumberyard payments, for $191 was paid to her children's guardianship accounts. Ruth agreed to contribute $663 ($409 plus $254) to the parties' living expenses. Philip was to contribute his net take-home pay from his employment with United Cerebral Palsy, amounting to slightly more than $500 a month. In the spring of 1964 he quit his job and bought a liquor store. He was then to contribute $400 of his monthly "draw" to living expenses when the liquor store prospered. However, the liquor store did not prosper and it was eventually sold. Philip now receives $500 a month from the sale. Their homestead and Philip's lake lots were put in joint tenancy in December 1964.

Ruth and Philip lived in St. Cloud, and Ruth maintained a joint checking account for their household expenses. She would deposit her monthly checks for $663 and Philip's monthly checks and pay the household expenses from the St. Cloud account. She maintained separate, individual bank accounts in Aberdeen, South Dakota. She paid her South Dakota farm expenses from a South Dakota account and kept the money from the sale of her Aberdeen house in a South Dakota account.

However, this arrangement did not work out. The monthly check pool was not enough to meet the monthly living expenses. During the marriage Ruth had to spend an additional $15,842.23 of her South Dakota money for joint living expenses. Of this, $4,873.07 went to improve their home, $3,242.48 was used for items solely for Philip's benefit, $590 was invested in the liquor store, and $7,136.68 went directly for joint living expenses. Ruth protested having to use her South Dakota assets, but Philip offered no solution.

The trial court ordered the joint property divided in such a way that Ruth would receive $8,705.55 from the proceeds. This represented the money she spent for home improvements, for Philip's sole benefit, and for the liquor store investment. In addition, the trial court awarded her $3,568.34 as one-half the money she spent for joint living expenses. All this originally amounted

to $12,273.89, but counsel later agreed to reduce the judgment to $11,000. An amended judgment was entered for this amount.

The trial court treated the amount it awarded for joint living expenses as damages for breach of Philip's duty to support his wife. These damages were not considered a property division, but the joint property was to remain in joint tenancy until the entire $11,000 judgment was paid.

■  The husband has a duty to support his family, and his wife has a right to recover money she paid for living expenses if she made such payments with the expectation of repayment. Kosanke v. Kosanke, 137 Minn. 115, 162 N. W. 1060; Petersen v. Swan, 239 Minn. 98, 57 N. W. (2d) 842. However, a wife has no absolute claim for money she has paid for joint living expenses if she did not originally expect to be repaid. The evidence in the record indicates that Ruth did not like paying additional money to meet the parties' living expenses, but could see no other solution. However, there is no evidence that Ruth expected to be repaid, so the court erred in awarding damages for Philip's breach of his duty to support Ruth.

■  Philip argues that the antenuptial agreement precludes the property division. An antenuptial property agreement is valid as long as it does not encourage divorce. Appleby v. Appleby, 100 Minn. 408, 111 N. W. 305; Annotation, 57 A. L. R. (2d) 942. Since neither spouse profited by divorce under the agreement, it did not encourage divorce and therefore was valid. However, Philip waived his rights under the agreement as to the property he put in joint tenancy with Ruth for she acquired joint-tenancy interests in this property. Philip argues that the joint tenancy was only a mortgage, but this is not at all clear under the record. There was testimony that the joint tenancy was created as security for Ruth's investment in the liquor store, but Ruth said that she had bona fide joint-tenancy interests and the trial court could properly conclude that bona fide joint tenancies were created. Under Minn. St. 518.58, the court had authority to divide the joint-tenancy property as property acquired during

coverture. The entire $11,000 award may be sustained by virtue of his statute. It makes no difference that the trial court called part of the award damages for breach of contract, since the trial court could divide the joint-tenancy property in a just and equitable manner, as it did.

Affirmed.