**In re the Marriage of Pedro DeLa ROSA, petitioner, Appellant,**

**v.**

**Elena DeLa ROSA, Respondent.**

**No. 50737.**

Supreme Court of Minnesota.

Aug. 28, 1981.

Robert L. McCormick, University Student Legal Service, Minneapolis, William Maupins, Bloomington, for appellant.

Hoke, Roehrdanz, Bigelow, Chamberlain & Goldsmith and Paul W. Chamberlain, Minneapolis, for respondent.

AMDAHL, Justice.

In this marriage dissolution proceeding, the petitioner, Pedro DeLa Rosa, appeals from a district court order awarding restitution to the respondent Elena DeLa Rosa, for financial support she provided the petitioner during his education. We remand this case to the trial court for entry of judgment consistent with this opinion.

The parties in this case were married in California on July 8, 1972. At that time, respondent had a college degree and petitioner was beginning his undergraduate education. The parties had an understanding that respondent would work and support petitioner while he obtained his undergraduate and medical degrees.

Petitioner began his pre-medical studies in California in the fall of 1972.[1] Between 1973 and 1976, while petitioner pursued a B.S. Degree, respondent worked full time, holding successive positions as an elementary schoolteacher, a youth employment director and an admissions director. In 1976, the parties moved to this state so that petitioner could attend medical school at the University of Minnesota. Respondent obtained a full-time job as a staff writer with a local newspaper, a position she currently holds.

The parties separated in November of 1977. Respondent paid the rent and utilities for that month. Petitioner filed for dissolution following his second year in medical school and the case was tried in July 1979 after he had completed his third year. He obtained his medical degree in June 1980.

---

1. Petitioner argues that California law is applicable to this case. We find that argument unpersuasive.

Prior to their separation, respondent was the primary source of financial income, thus permitting her husband to focus his energies upon obtaining an undergraduate degree, entering and attending medical school. The trial court found that respondent earned approximately $41,000 during coverture which was used for the parties' joint living expenses. Petitioner's contributions were nominal; he earned $2,300 and received Veterans' educational benefits in the total sum of $9,031. He also received a grant to attend medical school in the sum of $5,680. Petitioner had incurred student loans of approximately $10,000 at the time of separation. The record reveals that tuition for petitioner's undergraduate and medical educations during the parties' marriage was roughly $8,811.[2]

There was no specific testimony concerning payment of individual items by the respective parties. All funds were kept in a common pool. The parties owned no real property and had for the most part divided their modest personal property by agreement.

At the time of trial, respondent was admittedly self-supporting, earning an annual salary of approximately $15,600. For that reason, the trial court properly concluded that respondent was not entitled to mainte-nance under Minn.Stat. § 518.552 (1980). *Otis v. Otis*, 299 N.W.2d 114 (Minn.1980).[3] Respondent was awarded $29,669 for contributions she made to petitioner's education.[4] The trial court's award was grounded in equity and represented restitution of the financial support respondent provided to petitioner during the time he was attending college and medical school. Payment was ordered on an installment basis in increasing amounts since petitioner's financial situation was expected to improve.

Both parties have appealed.[5] This case presents issues of first impression in this state. The initial question before us is whether the trial court had authority to make an equitable award to respondent for the financial support she provided to petitioner during the time he was a full-time student. Secondly, we must determine whether the amount awarded by the trial court was an abuse of discretion or otherwise erroneous.

Petitioner argues that because there is an absence of a specific statute authorizing restitutionary relief incident to a dissolution, the trial court was without power to make the award in question. We disagree.

Although dissolution is a statutory action and the authority of the trial court is

2. Petitioner's undergraduate tuition was $1,780. The record reflects that the direct cost of petitioner's first year of medical school including petitioner's books, lab fees and tuition was $5,431. As of November 1977, the parties expended approximately $1,600 for petitioner's second year in medical school, given a cost of $6,397 for the full year.

3. In *Otis v. Otis*, we noted that both conditions of Minn.Stat. § 518.552 (1980) must be met before an award of maintenance is appropriate. There must be a finding that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, *and*
(b) is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

299 N.W.2d at 117 (emphasis added). Respondent does not assert that she intends to pursue further education or training.

4. The trial court utilized the following formula in determining the award:

respondent's financial contribution to community fund during college and medical school

*less*

petitioner's financial contribution to community fund during college and medical school excluding student loans and grants

*equals*

restitutionary award to respondent. ($41,000 − $11,331 = $29,669).

5. Cross-motions to dismiss were made by the respective parties. Respondent failed to file her notice of review within 15 days after service of petitioner's notice of appeal as required by Minn.R.Civ.App.P. 106. The notice of review was untimely and therefore, this court will decline to review the issues raised by respondent on this appeal.

limited to that provided for by statute, *Melamed v. Melamed*, 286 N.W.2d 716, 717 (Minn.1979), the district courts are guided by equitable principles in determining the rights and liabilities of the parties upon a dissolution of the marriage relationship. *Christenson v. Christenson*, 281 Minn. 507, 513, 162 N.W.2d 194, 203 (1960). The district court therefore has inherent power to grant equitable relief "as the facts in each particular case and the ends of justice may require." *See Johnston v. Johnston*, 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968).

The case at bar presents the common situation where one spouse has foregone the immediate enjoyment of earned income to enable the other to pursue an advanced education on a full-time basis. Typically, this sacrifice is made with the expectation that the parties will enjoy a higher standard of living in the future. Because the income of the working spouse is used for living expenses, there is usually little accumulated marital property to be divided when the dissolution occurs prior to the attainment of the financial rewards concomitant with the advanced degree or professional license. Furthermore, the working spouse is not entitled to maintenance under Minn.Stat. § 518.552 (1980) as there has been a demonstrated ability of self-support. The equities weigh heavily in favor of providing a remedy to the working spouse in such a situation and the district courts have the equitable authority to provide that relief.[6]

In *Englund v. Englund*, 286 Minn. 227, 175 N.W.2d 461 (1970), we recognized the right of one spouse in a divorce action to recover monies expended on joint living expenses if there was an original expectation of repayment. *Id.* at 230, 175 N.W.2d at 463. *See McGough v. McGough*, 311 Minn. 381, 384, 249 N.W.2d 885, 888 (1977). Although the evidence is insufficient to support such a finding in the instant case, respondent had a reasonable expectation that she would be rewarded for her efforts by a higher standard of living when petitioner began practicing medicine. We find that the trial court did not abuse its discretion in making an equitable award to respondent for the financial support she provided to petitioner during his schooling in light of the facts and circumstances of this case.

Respondent urges this court to hold that petitioner's education or increased earning capacity is marital property within the meaning of Minn.Stat. § 518.58 (1980), thus entitling her to a division of the present value of that asset.[7] In decisions which

---

**6.** Courts in other jurisdictions have considered the issue of a working spouse's entitlement to relief incident to a dissolution where that spouse supported the marriage during the student spouse's education. The jurisdictions which have allowed a recovery to the working spouse have based their rulings on divergent theories. Awards have been upheld on the ground that the student spouse's capacity for increased earnings is a marital asset subject to equitable distribution, *In re Marriage of Horstmann*, 263 N.W.2d 885 (Iowa, 1978); that the professional degree or license constitutes marital property, *Inman v. Inman*, 578 S.W.2d 266 (Ky.App.1979); *Lynn v. Lynn*, No. M–9842–7 (N.J.Super.Ct. Ch.Div., filed Dec. 5, 1980), *appeal docketed*, Feb. 19, 1981); *Mahoney v. Mahoney*, 175 N.J.Super. 443, 419 A.2d 1149 (1980); *See Moss v. Moss*, 80 Mich.App. 693, 264 N.W.2d 97 (1978); *Daniels v. Daniels*, 20 Ohio Op.2d 458, 185 N.E.2d 773 (1961), and that the working spouse has an equitable claim for her past investment, *Hubbard v. Hubbard*, 603 P.2d 747 (Okl.1979). The method of calculating an award is also a subject upon which these courts disagree. *Compare, e. g. Lynn, supra*, with *Mahoney, supra*.

Courts that have refused to recognize a property interest in cases of this type have done so on the grounds that an advanced degree or education lacks traditional property attributes, *Graham v. Graham*, 194 Colo. 429, 574 P.2d 75 (1978); *Aufmuth v. Aufmuth*, 89 Cal.App.3d 446, 152 Cal.Rptr. 668 (1979) *overruled in part on other grounds, Lucas v. Lucas*, 27 Cal.3d 808, 614 P.2d 285, 166 Cal.Rptr. 853 (1980); *Todd v. Todd*, 272 Cal.App.2d 786, 78 Cal.Rptr. 131 (1969); that future earnings do not constitute a vested present interest subject to distribution, *Wilcox v. Wilcox*, 173 Ind.App. 661, 365 N.E.2d 792 (1977); and that increased earning capacity is not marital property although the working spouse has aided and enhanced its development. *Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975).

**7.** Respondent's expert testified that the present value of petitioner's completed professional education was $246,478.

have so held, the student spouse had obtained either an advanced degree or professional license prior to the dissolution. That is not the situation here and we therefore find the cases cited by respondent inapposite.

Having concluded that the trial court in this case properly allowed an equitable recovery to respondent for the marital support she provided to petitioner during his education, we must consider whether the amount awarded constituted an abuse of discretion. It should be noted we have never addressed this issue and that the trial court did not have the benefit of guidelines in determining a proper award.

It is this Court's view that the award should have been limited to the monies expended by respondent for petitioner's living expenses and any contributions made toward petitioner's direct educational costs. To achieve this result, we subtract from respondent's earnings her own living expenses. This has the effect of imputing one-half of the living expenses and all the educational expenses to the student spouse. The formula subtracts from respondent's contributions one-half of the couple's living expenses, that amount being the contributions of the two parties which were not used for direct educational costs;

> working spouse's financial contributions to joint living expenses and educational costs of student spouse

*less*

½ (working spouse's financial contributions *plus* student spouse's financial contributions [8] *less* cost of education)

*equals*

equitable award to working spouse

Under this formula, respondent is entitled to the sum of $11,400 [9] as opposed to the $29,669 figure awarded by the trial court.[10]

The case is remanded to the trial court with directions to vacate the prior judgment and to enter judgment in accordance with this opinion,[11] with interest to be awarded from the date of the original judgment.

TODD, Justice (concurring in part, dissenting in part).

I concur in the portion of the majority opinion which affirms the equitable power of the trial court to permit recovery in a divorce proceeding by a former spouse for educational support.

However, since we are affirming the equitable power of the trial court in such proceedings, I do not believe it is necessary to cast the relief granted in a mathematical formula. Under all the facts and circumstances of this record, I would affirm the award of $29,669 to Elena DeLa Rosa.

8. The financial contributions of the student spouse includes earnings and any student loans, grants, stipends or other funds obtained by that spouse.

9. $41,000 (respondent's financial contributions) − ½ [$41,000 (respondent's financial contributions) + $2,300 (petitioner's earnings) + $9,031 (petitioner's veterans' benefits) + $5,680 (petitioner's medical school grant) + $10,000 (petitioner's student loans) − $8,810 (petitioner's undergraduate tuition and medical school costs)] = $11,400.

10. Because the trial court did not account for the income earned by respondent which was utilized for her own support and did not consider petitioner's educational expenses or his student grants and loans, it arrived at a higher figure.

11. The trial court may either devise a periodic payment plan or order a lump sum payment after due consideration of petitioner's financial situation.