**In Re the Marriage of Frank ELLESMERE, Petitioner, Appellant,**

v.

**Marilyn ELLESMERE, Respondent.**

No. C3-84-552.

Court of Appeals of Minnesota.

Dec. 11, 1984.

Ronald S. Goldser, Roe & Schmidt, Ltd., Minneapolis, for appellant.

Robert Zalk, Fredrikson & Byron, Minneapolis, for respondent.

Heard, considered, and decided by FOLEY, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Frank Ellesmere appeals from an amended dissolution decree, disputing the division of property and the award of attorney's fees. Further, he claims he should be awarded restitution for the support and educational expenses he provided Marilyn Ellesmere during their marriage. We affirm. .

## FACTS

Frank and Marilyn Ellesmere married in England on September 4, 1975. They met at Control Data where both were employed, Frank as a manager, Marilyn as his secretary. The marriage lasted eight years. He was 47 years old at the time of trial; she was 34.

Within several days of the marriage, Frank was transferred to Minnesota. Both parties were citizens of the United Kingdom, but he entered this country under a work visa. She was admitted due to her marital status, but was not allowed to work until February 1978 when she gained permanent residence status.

In Minnesota, she pursued her education which resulted in three advanced degrees. He strongly advised her to focus her coursework on business, which she did, although her interests lay in journalism, English, and drama.

She received an A.A. degree from Normandale Community College in 1977. In 1979 she graduated from the University of Minnesota with a degree in Business Administration.

He was transferred by Control Data to Houston, Texas in the fall of 1979. She accompanied him, held a variety of accounting jobs, then pursued an M.B.A. at the University of Houston. In 1982 Frank was transferred back to Minnesota. She finished her degree, then joined her husband.

In Minnesota, Marilyn held part time accounting jobs until the summer of 1983 when she commenced work with her current employer, Apache Corporation, as a financial analyst. Her income at the time of trial was $23,500 per year. Frank was an executive at Control Data earning $58,000 annually.

Throughout the marriage, the Ellesmeres deposited their earnings, as well as Marilyn's $14,800 inheritance, in a joint account. She contributed $56,445 to this account; he contributed $414,555. All family expenses were paid out of this account. Her tuition costs were $7,750. He paid alimony and child support of $32,000 to his former wife out of the family funds.

The marital estate of the parties totalled $64,300. That included a homestead with $20,000 equity, a lot in Texas with $17,000 equity, and a bank account of $9,961.59. Although the account contained only $1,500 at the time of trial, for purposes of property division, the court valued it at $9,961.59, this being the total when the parties separated.

The trial court ordered an equal division of the assets and liabilities between the parties, giving Frank the homestead, and the Texas lot to Marilyn.

Frank seeks reversal of the property division, together with an award of restitution of $183,000 for putting Marilyn through school.

## ISSUES

Did the trial court abuse its discretion:

1. In awarding each party one-half of the marital estate?

2. In not applying the *DeLa Rosa* theory to this case?

3. In not considering the purported settlement agreement?

4. In valuing husband's savings account as it did?

5. In awarding wife $1,000 in attorney's fees?

## ANALYSIS

1. Under Minn.Stat. § 518.58 (1982), the trial court must make "a just and equitable division of the marital property of the parties without regard to marital misconduct." The court must base its findings supporting the division upon:

all relevant factors, including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party. The court shall also consider the contributions of each in the acquisition, preservation, depreciation or appre-

ciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker. It shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife.

*Id.*

■ Although a trial court has broad discretion in the division of marital property, *Bogen v. Bogen*, 261 N.W.2d 606 (Minn. 1977), the overriding requirement of the statute governing the division of marital property is that the division be equitable.

Frank argues that the trial court's division was not equitable. He claims the court did not consider the Minn.Stat. § 518.58 factors in determining the property division because, if it had, he would have been granted a greater share of the marital property.

His argument is without merit. It was precisely in examining these factors that the trial court concluded an equal distribution would be an equitable distribution in this case.

■ The record does not indicate that Frank is in greater financial need than Marilyn. Indeed, both seem to be in good financial standing for the future. There are no extenuating circumstances in this case which would justify giving one of the parties a larger portion of the marital estate. The equal distribution is equitable.

2. Frank claims under *DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755 (Minn.1981), that he is entitled to restitution for his contribution to the educational and living expenses of Marilyn. He argues that his wife received three advanced degrees during the marriage, and then, shortly after she began full time employment, the parties separated.

In *DeLa Rosa*, the parties focused on a common goal of obtaining husband's medical degree. To achieve that goal, the wife delayed her own career and education, moved to Minnesota so that her husband could attend medical school, and worked in a succession of low-paying jobs. The wife earned an average of $8,000 per year during the five-year marriage. The entire amount of her earnings was spent on living and educational expenses. The court held that the wife was entitled to an equitable award for the financial support she provided to her husband while he was attending medical school.

In coming to this decision, the court reasoned:

> The case at bar presents the common situation where one spouse has foregone the immediate enjoyment of earned income to enable the other to pursue an advanced education on a full time basis. Typically, this sacrifice is made with the expectation that the parties will enjoy a higher standard of living in the future. Because the income of the working spouse is used for living expenses, there is usually little accumulated marital property to be divided when the dissolution occurs prior to the attainment of the financial rewards concomitant with the advance degree or professional license. Furthermore, the working spouse is not entitled to maintenance under Minn.Stat. § 518.552 (1980) as there has been a demonstrated ability of self-support. The equities weigh heavily in favor of providing a remedy to the working spouse in such a situation and the district courts have the equitable authority to provide that relief.

*Id.* at 758.

The issue to be decided here is whether there has been a sacrifice and foregoing of the enjoyment of earned income significant enough to fit within the *DeLa Rosa* principle for allowing recovery. The facts of this case do not present such a sacrificing couple.

Both parties testified that they lived extravagantly. Frank earned approximately $52,000 each year during the marriage. Unlike the struggling wife in *DeLa Rosa*, he cannot argue that the cost of his wife's education required substantial sacrifice. Their lifestyle was unaffected by her education. They bought real property, cars,

and made investments. At the time of separation, they had over $18,000 in savings. In addition, he was able to pay more than $32,000 to his ex-wife and children in alimony and child support.

■ Unlike the wife in *DeLa Rosa*, Frank did not make any career or educational sacrifices in support of his wife's education. His position with Control Data required him to move from the United Kingdom to the United States in 1975. Marilyn relocated with him. In 1979 his employer required that he move to Houston, Texas. She again moved with him. He was transferred back to the Twin Cities in 1982. She again followed. None of these moves was made to further her education or career. Rather, she followed him so that he could pursue his career. Incidental thereto is the fact that she was pursuing her education.

Under these facts, equitable restitution would not be appropriate.

■ 3. Frank attempted to introduce at trial a purported written settlement agreement dated June 10, 1983, under the terms of which Marilyn was to receive virtually none of the marital property. His offer of proof did not indicate that she had been given full disclosure of the nature or value of the marital assets, and the agreement did not carry waiver of counsel as required by Rule 3.09 of the Uniform Rules of Procedure for Family Court dissolution matters. Therefore, the trial court properly excluded this stipulation.

4. When the parties separated, Frank had under his control approximately $10,000 in the parties' joint savings account. He immediately transferred that sum to an account under his exclusive control. At the time of trial, the savings account contained $1,500. He claims that he "required the money to live on," and therefore the amount he spent should not be included in his share of the marital property.

This claim is contrary to his testimony in which he indicated that he helped his adult daughter purchase a car and pay her college tuition, and that he purchased a television set for $700.

■ In examining his testimony, it becomes evident that he did not use the money for the ordinary necessities of life. Therefore, the trial court did not abuse its discretion in valuing the bank account at the higher sum.

■ 5. It is well settled that the trial court has broad discretion to require one party to pay all or part of the attorney's fees of the other. Allowance of attorney's fees in dissolution cases rests almost entirely in the discretion of the trial court. *Kirby v. Kirby*, 348 N.W.2d 392, 399 (Minn. Ct.App.1984).

Here, the trial court awarded Marilyn $1,000 in attorney's fees. Frank contests this award.

■ In so ordering, the trial court reasoned: "the petitioner's earning capacity is approximately three times that of wife." In addition, she was obligated to defend more issues than in a normal divorce proceeding.

The trial court did not abuse its discretion.

## DECISION

An equal distribution of the marital property was an equitable distribution in this case.

Husband was not entitled to an equitable recovery of the financial support and educational expenses he provided his wife during their marriage.

The trial court did not abuse its discretion in excluding a purported settlement agreement in valuing marital property or in awarding attorney's fees.

Affirmed.