In re the Marriage of Keith R.
NELSON, petitioner,
Appellant,

v.

Karen A. NELSON, Respondent.

No. CO–85–1314.

Court of Appeals of Minnesota.

March 18, 1986.

John H. McLoone, IV, Molly Byron, Waseca, for appellant.

James R. Keating, Keating & Peterson, Faribault, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

This is a marriage dissolution action. Keith R. Nelson appeals from a June 11, 1985 order denying his alternate motions for amended findings or a new trial, claiming error in the trial court's division of property. We affirm in part, reverse in part and remand.

## FACTS

Keith and Karen Nelson were married on September 28, 1979, and separated in January 1984. Appellant commenced this action for dissolution on March 7, 1984. At the time of trial, appellant was 33 years old and respondent was 44 years old. The nature of the parties' relationship prior to marriage was disputed at trial. Respondent testified that the couple began living together as husband and wife in 1976. Appellant denied this characterization of the relationship but testified that sexual relations between the parties commenced in 1974.

In the fall of 1976, appellant started classes at William Mitchell School of Law in Saint Paul, Minnesota. While attending law school, he worked for a land surveying company. In May 1979, he became a registered land surveyor. This employment continued through January 1981. Appellant graduated from law school in June 1980 and was licensed to practice law in October 1980. In December 1980, appellant started a solo practice in Faribault, Minnesota. Appellant liquidated most of the business assets in 1984 to pay back rent of $3,500. In November 1984, he joined a Faribault law firm as an associate and remained in that capacity at the time of trial.

Respondent is a high school graduate and a licensed cosmetologist. She is the custodial parent of four children from a previous marriage which ended in divorce in April 1975. Three of the children were minors at the time of trial. Respondent received the homestead (Winter residence) as part of the property distribution in the first divorce. The parties lived in the Winter residence after their marriage until July 1981.

In 1974, respondent began working full time for the Faribault school system as an educational assistant. During this period, she also worked part time as a store clerk. In 1983, she began working full time at the Inisfail Children's Center in Faribault, where she remained at the time of trial.

Based on trial exhibits and tax returns, the parties' earnings from 1976 through 1983 were as follows:

|  | KEITH NELSON | | | KAREN NELSON |
|---|---|---|---|---|
|  | Federal AGI | W–2 | Sched. C–Bus. Inc. | W–2 |
| 1976 | $5,055.15 | 0.00 | 0.00 | $7,440.00 |
| 1977 | 7,739.48 | 0.00 | 0.00 | 7,249.00 |
| 1978 | 7,895.93 | 0.00 | 0.00 | 8,228.00 |
| 1979 | 0.00 | $11,539.50 | 0.00 | 8,342.00 |
| 1980 | 0.00 | 15,840.20 | 0.00 | 9,899.00 |
| 1981 | 0.00 | 422.00 | $2,917.00 | 11,925.00 |
| 1982 | 0.00 | 0.00 | 5,649.00 | 12,435.00 |
| 1983 | 0.00 | 0.00 | 9,249.00 | 12,177.00 |

In addition, respondent received $4,800 per year in child support through April 1981 and $3,600 per year thereafter. Appellant's student loan summary reflected relevant indebtedness of: 1975–76—$1,500; November 1, 1977—$5,000; November 14, 1978—$5,000; and November 20, 1979—$1,635. Appellant testified that he additionally incurred approximately $800 in book expenses during this period. He could not recall his transportation expenses, although he stated that he regularly drove 300–400 miles per week to and from school. Respondent stated that appellant's total educational expenses were approximately $17,000. Her opinion was based on tuition figures submitted (approximately $7,000), book and transportation costs.

In July 1981, the parties entered into an agreement which, in essence, traded the equity in the Winter residence for a new home in Faribault (Westwood residence). The parties executed a contract for deed prepared by appellant for $78,500 as tenants in common. Respondent transferred $30,001 of the Winter residence equity as a downpayment on the Westwood residence. In addition, she paid realtor commissions and the balance of a pre-marital car loan appellant had incurred.

Appellant testified that he contributed $500 in earnest money toward the Westwood residence but supplied no documentation of this claim. He could not recall who had paid off his pre-marital car loan. Appellant further stated that the fair market value of the Westwood residence at the time of the separation was about the same as the purchase price—$78,500.

On direct examination, respondent stated that the fair market value of the property at trial was $76,000. She stated that the valuation was based on an appraisal of the property but offered no documentation of this appraisal amount. On cross-examination, however, respondent stated that the current value of the homestead was between $78,000 and $78,500, although she made $5,000 in improvements subsequent to the parties' separation. As a result of the modifications, respondent received $300 per month in rental income starting in June 1983. The existing mortgage on the homestead at the time of trial was $42,557.

The couple maintained two separate checking accounts after the marriage, a joint account and appellant's business account. Appellant testified that he made house payments totalling approximately $4,370 and contributed an additional $2,000 toward family expenses. He explained that he made 80–90% of the house payments from his business account but was unable to identify these disbursements from bank statements utilized at trial.

Respondent testified that until 1983, she made the majority of house and insurance payments. She could not recall who paid the real estate taxes. Respondent further testified that appellant deposited his earnings in their joint account on a "few occasions * * * but not on a regular basis by any means."

The evidence further established that appellant owned a ⅙ partnership interest in Mazaska Land Company, which he testified was worth approximately $300. By agreement of the parties, various items of personal property were divided—appellant received property valued at $11,522 and respondent received property valued at $8,982. The parties further stipulated to a division of debts and obligations, exclusive of debts relating to real property.

The trial court awarded respondent a lump sum of $10,681 in addition to property currently in her possession. The lump sum amount was calculated as follows:

| Equalization of personal property values | $1,270 |
| --- | --- |
| Equitable restitution for law school | 155 |
| Equitable restitution for law practice start-up | 9,256 |

## ISSUES

1. Is the trial court's equitable award to respondent for contributions made to appellant's law school education and for law practice start-up supported by adequate findings of fact?

2. Did the trial court abuse its discretion when it awarded the homestead to respondent as non-marital property?

## ANALYSIS

### I.

It is well established that an appellate court will not overturn a trial court's distribution of property in a marital dissolution absent a clear abuse of discretion. *Servin v. Servin*, 345 N.W.2d 754, 758 (Minn.1984).

Implicit in this standard of review is the more general principal that "[b]efore a judgment can be sustained on appeal, the conclusions upon which it is based must find support in the findings of the trial court." *Naffke v. Naffke*, 240 Minn. 468, 471, 62 N.W.2d 63, 65 (1953).

In all civil cases without a jury, a trial court is required to "find the facts specially and state separately its conclusions of law thereon * * *." Minn.R.Civ.P. 52.01. *See Posselt v. Posselt*, 271 Minn. 575, 136 N.W.2d 659 (1965). The purpose of the rule is to "aid [an] appellate court by affording it a clear understanding of the ground or basis of the decision * * *." *Asch v. Housing & Redevelopment Authority*, 256 Minn. 146, 155, 97 N.W.2d 656, 664–65 (1959).

■ Here, we are further presented with the trial court's failure to specifically incorporate its memorandum as part of the record.[1] An unincorporated memorandum "may be referred to only for the purpose of throwing light upon or explaining the decision." *Kowalzek v. Kowalzek*, 360 N.W.2d 423, 426 (Minn.Ct.App.1985) (quoting *Viking Automatic Sprinkler Co. v. Viking Fire Protection Co.*, 280 Minn. 250, 258, 159 N.W.2d 250, 256 (1968)).

> The general rule is that a memorandum of a trial judge is no part of the order or findings to which it is attached, unless expressly made a part thereof; and, whether attached or not, it may be referred to only for clarification where the trial court's order or finding is not explicit in itself and is ambiguous.

*Sieren v. American Family Financial Services*, 356 N.W.2d 408, 411 (Minn.Ct. App.1984), *pet. for rev. denied*, (Minn. February 6, 1985) (quoting *McMillen v. Meyer*, 246 Minn. 132, 135–36, 74 N.W.2d 393, 395 (1965)). In the instant case, the trial court found in relevant part:

### XIII. •

The parties lived together out of wedlock from 1976 until their marriage in September, 1979.

### XIV.

The Petitioner entered law school in September, 1976 and received his Juris Doctor degree in June, 1980.

### XV.

The Petitioner started a solo law practice in Faribault, Minnesota in December, 1980 and continued it until joining an existing law firm as an associate in November, 1984.

### XVI.

The parties were separated in January, 1984.

### XVII.

During the period from September, 1976 through June, 1980 the income of the parties, exclusive of child support received by Respondent was:

| Petitioner | Respondent |
| --- | --- |
| $35,479.00 | $30,424.00 |

### XVIII.

During the period from September, 1976 through June, 1980 the Petitioner incurred $17,500.00 of expenses for his legal education.

### XIX.

Petitioner secured student loan totalling $12,135.00 apportionable to the period during which he was in law school.

### XX.

The income of the parties from the time that Petitioner commenced his law practice in December, 1980 up to, but not including, January 1984 when the parties were separated, was:

| Petitioner | Respondent |
| --- | --- |
| $19,051.00 | $37,563.00 |

Respondent's income figure does include child support received by Respondent during that time.

---

1. We note that the 1985 amendments to Minn.R. Civ.P. 52.01 provide that "[i]t will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court *or in an accompanying memoran-* *dum.*" (emphasis added) While this provision seemingly disperses with the need for specific language of incorporation, it does not affect the present case since the trial court's judgment and order denying a new trial took place before the effective date of the amendment, July 1, 1985.

■ As a preliminary point, we think the record supports the finding that the parties were living together as husband and wife from 1976 until their marriage in September 1979. Although appellant disputed this characterization at trial, we note that he stated in a March 19, 1984 affidavit utilized on cross-examination that the characterization was true "in most respects." While the evidence also established that appellant maintained a separate residence during this period, the extent to which he used this residence was unclear. We are not persuaded that the trial court erred when it determined that the parties lived together starting in 1976, given its broad discretion in assessing the credibility of the witnesses. *See Lindsay v. State Farm Fire & Casualty Co.*, 366 N.W.2d 409, 410 (Minn. Ct.App.1985).

The trial court's restitution award for appellant's legal education was based on an equitable formulation in *DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755 (Minn.1981).

*DeLa Rosa* was the first case in this jurisdiction to recognize a working spouse's entitlement to equitable relief for contributions made toward a student spouse's education. The formula was as follows:

working spouse's financial contributions to joint living expenses and educational costs of student spouse

*less*

½ (working spouse's financial contributions *plus* student spouse's financial contributions [8] *less* cost of education)

*equals*

equitable award to working spouse

---

[8]. The financial contributions of the student spouse includes earnings and any student loans, grants, stipends or other funds obtained by that spouse.

*Id.* at 759. The trial court's calculations with respect to law school were as follows:

A = Respondent's contributions = $30,424.00
B = Petitioner's contributions = 47,614.00
C = Cost of Petitioner's education = 17,500.00

$$A - 1/2(A+B-C) = \text{Equitable award to Respondent}$$
$$\$30,424.00 \quad - 1/2(\$30,424.00 + \$47,614.00 - \$17,500.00) = \$155.00$$

The law practice start-up award was calculated as follows:

Respondent's contributions = $37,563.00
Petitioner's contributions = 19,051.00
18,512.00

$18,512 divided by 2 equals $9,256.00.

*DeLa Rosa* is distinguishable from the present case because it dealt with contributions to education costs and living expenses *while the parties were married*. Here, the bulk of any contributions respondent made toward appellant's legal education or living expenses occurred *prior* to the marriage. Moreover, unlike the student spouse in *DeLa Rosa*, appellant received his degree prior to the dissolution.

■ Appellant argues that an equitable award of this nature would constitute "palimony" and circumvent Minn.Stat. §§ 513.075 and 513.076 (1984). We need not address this argument since it is clear that Minn.Stat. §§ 513.075 and 513.076 are not applicable to the facts in this case. *Cummings v. Cummings*, 376 N.W.2d 726 (Minn.Ct.App.1985). The parties here married in 1979. The palimony statutes became effective in 1980. As the trial court properly noted, these cohabitation statutes were not meant to be applied retroactively. *See Hollom v. Carey*, 343 N.W.2d 701 (Minn.Ct.App.1984).

Although *DeLa Rosa* is not precisely on point, this does not restrict the trial court from utilizing its equity powers to achieve a just result. *See Johnston v. Johnston*, 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968). The trial court believed such an exercise of its discretion appropriate under the circumstances of this case:

It would be patently unfair to leave Respondent with no remedy because she has no prospect of ever receiving any benefit from Petitioner's legal education and experience. Petitioner received that legal education and experience due, in no small measure, to the efforts of Respondent.

■ While we do not challenge the trial court's inherent right to utilize its equitable powers, we do take issue with the total lack of any findings to support the trial court's conclusions of law. In short,

the record before us is nothing more than a synopsis of the parties' earnings and obligations prior to and during the marriage. Absent are findings relative to (1) the parties' living expenses during this period; (2) the percentage of *net* income respondent contributed to appellant's living expenses and educational costs; (3) the existence of an understanding between the parties that respondent would support appellant while he obtained his law degree and that respondent would, in return, share the rewards of appellant's financial success; and (4) what financial or personal sacrifices, if any, respondent made during the period appellant was starting his law practice. *See DeLa Rosa*, 309 N.W.2d 755, 759 (equitable award limited to monies expended for living expenses and contributions toward *direct* educational costs). *See also Ellesmere v. Ellesmere*, 359 N.W.2d 48, 51 (Minn.Ct.App.1984) ("the issue * * * here is whether there has been a sacrifice and foregoing of enjoyment of earned income significant enough to fit within the *DeLa Rosa* principle for allowing recovery.")

■ We further note that the trial court utilized gross income figures for respondent and business income figures for appellant in arriving at the parties' total contribution prior to and during the marriage. The better practice is to use net figures in making this determination. *See Nelson v. Nelson*, 371 N.W.2d 19 (Minn.Ct.App.1985). Should further documentation or testimony by the parties be necessary for more detailed findings in these areas, the trial court may so allow.

## II.

■ Appellant claims that the trial court erred in failing to consider his marital interest in the parties' homestead. We disagree. Under the particular facts of this case, award of the homestead to respondent as non-marital property was proper. The trial court's explanation for the award was as follows:

The homestead property * * * is non-marital property. The down payment of $30,001.93 for that property was paid entirely by Respondent with proceeds from the sale of her previous homestead. Petitioner's claim of an earnest money payment is not supported by the evidence. Furthermore, the [Respondent] made the great majority of the contract

for deed payments on the homestead and the few payments made by Petitioner are of no legal consequence here. The homestead property clearly falls within meaning of non-marital property set forth in M.S. 518.54 Subd. 5(c).

While it is presumed under Minn.Stat. § 518.54, subd. 5 (1984) that property acquired during the marriage is marital, the trial court determined that this presumption was overcome when it referenced to Minn.Stat. § 518.54, subd. 5(c). This statutory subsection defines non-marital property as that "acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d) and (e)." Minn.Stat. § 518.54, subd. 5(c).

Under Minn.Stat. § 518.54, subd. 5(b), property "acquired before the marriage" is non-marital. Here, the $30,001 downpayment on the homestead clearly derived from a partial transfer of equity in a home respondent owned prior to the marriage. As stated in *Larson v. Larson*, 365 N.W.2d 358, 360 (Minn.Ct.App.1985):

As long as all or any portion of a homestead is "readily traceable" to an investment of nonmarital funds, such homestead or portion thereof is properly classified as nonmarital property.

*Id.* at 360; *see also Kottke v. Kottke*, 353 N.W.2d 633, 635–36 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. December 20, 1984).

Appellant claims, in essence, that the trial court was required to apportion the homestead between non-marital and marital interests as provided in *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981). In *Schmitz*, the supreme court held that the homestead, acquired with non-marital funds and a mortgage for the balance, was properly apportioned between marital and non-marital interests. *Id.* The formula utilized in *Schmitz* was subsequently refined in *Brown v. Brown*, 316 N.W.2d 552, 553 (Minn.1982):

The present value of a nonmarital asset used in the acquisition of marital property is the proportion the net equity or contribution at the time of acquisition bore to the value of the property at the time of purchase multiplied by the value of the property at the time of separation. The remainder of equity increase is char-

acterized as marital property and is distributed according to Minn.Stat. § 518.58 (1980).

*See also Andersen v. Andersen,* 374 N.W.2d 499 (Minn.Ct.App.1985); *Quinlivan v. Quinlivan,* 359 N.W.2d 276 (Minn. Ct.App.1984).

While similarities exist between these cases and the instant case, we are not convinced that the trial court's failure to apportion the parties' interests in the homestead was an abuse of discretion. Neither party here claims that the homestead appreciated in value. Quite the opposite. Appellant testified that the fair market value of the property at the time of the parties' separation was precisely the same as its original cost—$78,500. He offered no opinion as to the value of the homestead at the time of trial.

Respondent's figures ranged from $76,000 to $78,500. Further, by appellant's own admission, he made no improvements to the property. Therefore, the only equity appellant could properly characterize as marital consisted of payments on the contract for deed and disbursements for family living expenses. We find nothing in the exhibits to substantiate the total payments claimed by appellant. He will not be heard to complain now when he had full opportunity to particularize these claims at trial.

### DECISION

A trial court has broad discretion in utilizing its equitable powers to achieve a just result in a marriage dissolution. Nonetheless, a remand is necessary when, as in the instant case, the record is devoid of any findings to support the trial court's equitable restitution awards to respondent and when the trial court fails to incorporate its memorandum into the record. The trial court is instructed on remand to consider the parties' net earnings for the relevant periods and to open the record for additional documentation and testimony should it deem this necessary.

The trial court's award of the homestead to respondent as non-marital property was proper under the circumstances of this case.

Affirmed in part, reversed in part and remanded.