**In re the Marriage of Karen Rae STROMBERG, petitioner, Appellant,**

v.

**Willard Raymond STROMBERG, Respondent.**

No. C7–86–669.

Court of Appeals of Minnesota.

Dec. 9, 1986.

Candace J. Barr, Candace J. Barr & Associates, Minneapolis, for appellant.

Thomas R. Borden, Borden, Steinbauer, Rathke & Krueger, Brainerd, for respondent.

Considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This appeal arises from a post-dissolution property distribution proceeding and judgment of the trial court amending the original judgment and dissolution decree. We affirm in part and reverse in part.

## FACTS

The parties were married on August 19, 1967. There were two children born of the marriage: Jason Raymond Stromberg, born December 21, 1972; and Ryan Thomas Stromberg, born July 11, 1975. The marriage was dissolved after a contested hearing on January 21, 1982.

On November 2, 1978, appellant Karen Stromberg was seriously injured in a car accident. Pending at the time of the dissolution decree were appellant's personal injury claim and respondent Willard Stromberg's loss of consortium claim. The court retained jurisdiction over the settlement proceeds and directed respondent to cooperate in all matters relative to those proceedings. Subsequent to the divorce, a jury awarded approximately $120,000 to appellant and $6,000 to respondent on his loss of consortium claim. The verdict was appealed by the defendants, and the parties agreed to an out of court settlement on March 10, 1983. Appellant and respondent signed a release and satisfaction of judgment in the amount of $120,000.

The dissolution decree of January 21, 1982 provided in part as follows:

7. Awarding to Petitioner the use and possession of the parties' homestead as described in the foregoing Findings and directing both parties to cooperate with each other in listing the property for sale with a reputable real estate broker and to further cooperate with each other and the broker in effecting a sale of the property as soon as practicable. Until such sale has been effected, Respondent and Petitioner shall pay in equal amounts the monthly mortgage (PITI) installments due upon said premises until February 1, 1983, at which time petitioner shall be wholly responsible for said monthly mortgage payments in the event the property is not sold by that date. Further, Petitioner and Respondent shall be equally responsible for and pay such repairs and maintenance as may be necessary. Upon the sale of said property the proceeds thereof shall be divided equally between the parties after first deducting the costs of sale and after paying the balance owing to the life insurance company on the $3,500.00 loan specified in the foregoing Findings of Fact. Further, from the respective amounts Petitioner and Respondent are entitled to there shall be deducted and paid to the entitled party together with 12% interest from the date of payment by said party, all house payments that either party failed to make. Further, the sum of $6,300.00 which is equal to the excess of personal property (1978 Dodge Aspen automobile) awarded to the Petitioner shall be deducted from the proceeds of the sale of said property and paid to the Respondent together with interest accrued at the rate of 12% per annum on any unpaid balance from the date of this Judgment.

Appellant listed the Emily, Minnesota homestead with a real estate broker soon after the decree. After six months the listing agreement expired without the property being sold. The real estate agent suggested to the parties that they make the house more saleable, by either lowering the price or making some changes to the home. Respondent would not agree to lower the asking price, so it was not relisted at that time.

In order for appellant to complete occupational therapy training, and because her physical disabilities from the accident made it difficult for her to maintain the homestead, appellant and the children moved out of the homestead and relocated in the Twin Cities on August 15, 1983. Respondent moved into the home at that time and took over the mortgage payments, including approximately $800 in arrearages. Respondent made substantial improvements while he maintained residence in the home, including carpentry work, staining and wallpapering, putting in a patio, and clearing the lakefront property. During the next three years appellant and respondent talked to one another about relisting the home for sale at various times, but neither took a substantial step in that direction. Respondent continued to live in the home and make the mortgage payments. Respondent never asked for reimbursement from appellant and appellant never asked respondent for rental value payments.

In the post-dissolution proceeding appellant urged the trial court to find respondent in contempt of court for refusing to agree to lower the price of the property when the original listing agreement had expired without sale, and to declare the $120,000 personal injury settlement as her nonmarital property. Appellant disputed her responsibility for mortgage payments respondent made while residing in the home because the original decree provision requiring that she make the payments assumed that she and the minor children would be maintaining residence in the home. In addition, appellant argued that improvements respondent made to the home were of his own volition, without her authorization, and therefore not her financial responsibility.

The trial court found that respondent had not contemptuously violated the judgment relative to the sale of the house. The trial court ordered the parties to either agree on a sale price within seven days, or have the home sold by public auction. The parties did not agree on a price and the house was ordered sold at public auction. The trial court ordered one-half of the cost of materials used for improvements to the homestead deducted from appellant's share of the proceeds from the sale of the house, along with $3,000 in interest accrued on the car since the January 1982 judgment, $4,000 representing respondent's share of the personal injury settlement, and mortgage payments totaling approximately $12,000 made by respondent from February 1, 1983, until the house was sold.

## ISSUES

1. Did the trial court err in finding respondent had not contemptuously violated the dissolution decree by refusing to agree to lower the sale price of the home?

2. Did the trial court err in authorizing the sale of the home by public auction?

3. Did the trial court err in deducting from appellant's share of the proceeds from the sale of the home the interest which had accrued on appellant's car, and mortgage payments made by respondent after he moved into the house in August of 1983?

4. Did the trial court err in deducting from appellant's share of the proceeds from sale of the home one-half the cost of the improvements respondent made on the property and respondent's share of the personal injury settlement?

## ANALYSIS

**1. Did the trial court err in finding respondent had not contemptuously violated the dissolution decree by refusing to agree to lower the sale price of the homestead?**

■ Minn.Stat. § 550.02 (1980) provides that where judgment requires performance

of an act and a party refuses to comply, he may be punished by the court for contempt. *See also* Minn.R.Civ.P. 70. In this case, the decree directed the parties to "cooperate" with each other in listing and effecting a sale of the property as soon as practicable. Appellant does not assert any action or inaction by respondent constituting contempt other than his refusal to relist the house at a lower price when the original listing agreement lapsed. The trial court reasonably determined that respondent's decision not to lower the sale price did not in and of itself constitute contemptuous refusal to cooperate.

**2. Did the trial court err in authorizing the sale of the homestead by public auction?**

The trial court is accorded broad discretion with respect to division of property in dissolution actions. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). However, if there is a clearly erroneous conclusion that is against logic and the facts on the record, the court of appeals will find that the trial court abused its discretion. *Id.*

■ Here, the original decree ordered the sale of the home. The subsequent order to have the house sold by public auction was an attempt to expedite the long delayed sale. While the trial court originally had authority to order the home sold, such property divisions are final and are not subject to modification except under certain circumstances not present in this case. *Kerr v. Kerr,* 309 Minn. 124, 126, 243 N.W.2d 313, 314 (1976). Because the present order for sale by public auction results in a significant change in the distribution of assets, it is more in the nature of a modification of the property distribution than an enforcement of the original distribution provision, and was therefore an abuse of the trial court's discretion.

■ Even if this were viewed merely as an order enforcing a provision of the original dissolution decree, to allow a sale by public auction would be disregarding the overriding requirement of the statute that the division of marital property be just and

equitable. Minn.Stat. § 518.58 (1984), *Ellesmere v. Ellesmere,* 359 N.W.2d 48, 51 (Minn.Ct.App.1984). An equitable division was contemplated by the original decree, which ordered the home sold and the proceeds divided between the parties. However, the implementation of that order by way of a forced sale is inequitable in light of the fact that the market value of the home is $86,000, and a forced sale will likely net the parties little more than the $22,000 outstanding mortgage. It was an abuse of discretion to order the home sold by public auction when there was no acceptable basis in fact or principle for such a disposition. *See DuBois v. DuBois,* 335 N.W.2d 503, 507 (Minn.1983).

**3. Did the trial court err in deducting mortgage payments made by respondent and interest accrued on appellant's car from appellant's share of the proceeds from the sale of the home?**

■ The judgment awarding use and possession of the homestead to appellant and her minor children was in the nature of child support and modifiable based on a change in circumstances. *See Saabye v. Saabye,* 373 N.W.2d 386, 387 (Minn.Ct.App. 1985). The change in occupancy of the homestead after the decree constituted a change in circumstances warranting modification of the homestead award. Here, the trial court held appellant responsible for mortgage payments voluntarily assumed by respondent after he took occupancy of the homestead. Requiring reimbursement of those payments would force appellant to pay respondent's housing costs, a result clearly not included in or intended by the decree. Strict enforcement of the original judgment in this instance would be manifestly "unreasonable and unfair." Minn.Stat. § 518.64, subd. 2 (1984), and was thus an abuse of discretion.

Similarly, since the original order contemplated prompt sale of the home, the trial court's adherence to the provision requiring appellant to pay interest on a 1978 automobile was an abuse of discretion. While interest payments are not in the na-

ture of child support, the award must be equitable. *Ellesmere,* 359 N.W.2d at 51. To hold appellant responsible for thousands of dollars in interest payments when she was not solely responsible for the failure to sell the house is grossly inequitable. A just solution would have been to establish a reasonable limit on the amount of interest accruable. The trial court erred in requiring payment of the full amount.

**4. Did the trial court err in deducting one-half the cost of the property improvements made by respondent and respondent's share of the personal injury claim from appellant's share of the proceeds from the sale of the home?**

 Appellant claims that while the original decree specified that she and respondent share the expense of "repairs and maintenance" to the home, she was not required to split the cost of improvements voluntarily made by respondent without her permission. Appellant agreed that some of the improvements were necessary to make the property more marketable. The trial court could reasonably have determined that since the improvements added to the overall value of the property and would be reflected in the final sale price, appellant should be responsible for half of the cost. *See Kreidler v. Kreidler,* 348 N.W.2d 780, 783 (Minn.Ct.App.1984).

Appellant also argues that respondent was not entitled to any part of the personal injury award because he signed a satisfaction and release. Appellant contends that although respondent was awarded a separate and identifiable amount by jury verdict, the satisfaction and release he signed pursuant to the later settlement was for a lump sum, with no amount specifically awarded to him individually, so he is entitled to nothing. This argument is not only illogical, but it also seeks to punish respondent for complying with the court's order that he "cooperate in all matters relating to said proceeding and in possible settlement of said lawsuit." The trial court fairly and correctly awarded respondent his share of the settlement proceeds.

## DECISION

The trial court did not err in denying appellant's request to find respondent in contempt of court for refusing to agree to lower the sale price of the home.

Enforcement of the original decree provision ordering the home sold by a subsequent order for sale by public auction was unauthorized and inequitable and therefore an abuse of discretion.

It was error for the trial court to require appellant to pay three years accumulated interest on her car, and the mortgage payments voluntarily assumed by respondent.

The trial court correctly deducted from appellant's share of the proceeds from the sale of the homestead one-half the cost of improvements to the home and respondent's share of the personal injury settlement.

Affirmed in part, reversed in part.