**In re the Marriage of Jean Louise JEN-SEN, n/k/a Jean Louise Phipps, Petitioner, Respondent,**

v.

**Jerome Jay JENSEN, Appellant.**

**No. CX–88–2081.**

Court of Appeals of Minnesota.

May 23, 1989.

Stuart L. Finney, Fuller & Finney, Edina, for petitioner, respondent.

James C. Lofstrom, Scheide, Smith & Lofstrom, P.A., Eagan, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and HUSPENI and SCHULTZ,* JJ.

## OPINION

HUSPENI, Judge.

The trial court in granting post-decree relief sought by respondent, credited re-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. We note that the decree contained certain provisions in addition to those explicitly referenced in the stipulation read into the record. How-

spondent with amounts by which she reduced the homestead mortgage principal from the time of the final dissolution hearing and required that appellant bear responsibility for half the cost of capital improvements made to the homestead by respondent after the parties' dissolution and without appellant's agreement. Appellant challenges the trial court's order as an impermissible modification of the property division provisions of the decree. We affirm in part and reverse in part.

## FACTS

A temporary order issued during the pendency of the parties' dissolution proceedings stated in part:

> Until further Order of this Court, the monthly mortgage payments on [the parties' marital homestead] shall be the sole responsibility of [appellant] and he shall hold [respondent] harmless thereon.

At the final dissolution hearing on December 3, 1984, the parties orally stipulated on the record to all relevant issues. The decree drafted from the stipulation included an agreed upon homestead market value of "approximately $89,900," an award to appellant of a lien for half of the net equity of the homestead realized upon sale, and a provision that respondent was to make all mortgage, tax and assessment payments until sale of the homestead.[1] Upon sale she was to be

> credited with the amount which she has reduced the balance of the principal amount due under the mortgage from the date of the entry of this Judgment and Decree until the time the property is sold and closed upon.

The parties also stipulated that:

> [appellant] shall not have any rights whatsoever in the [marital homestead] after the entry of the Judgment, except the right to receive a portion of the equity upon sale. * * *

ever, we also note that the decree was drafted and approved by respondent's counsel and that respondent does not now question any of these terms.

While the stipulation was read into the record at the final hearing, the dissolution decree was not entered until June 15, 1985. Whatever the cause of this delay, respondent started making mortgage payments in December 1984. After entry of the decree, respondent expended $7,280.19 to improve the former homestead property by adding, among other things, a bedroom and a three-quarter bath.

In spring 1988, respondent agreed to sell the house for $95,000. She requested appellant allow her reimbursement for the money spent on improvements and the amount by which she reduced the mortgage principal. When appellant refused, respondent sought and obtained relief in the trial court on both issues. Appellant challenges all relief granted by the trial court and alleges that such relief violates the provisions of Minn.Stat. §§ 518.58 and 518.64 regarding finality of property division in dissolution cases.

## ISSUES

1. Did the trial court's order allowing respondent reimbursement for amounts by which she reduced the mortgage principal balance between December 1984 and June 1985 improperly alter the parties' property settlement?

2. Did the trial court's order allowing respondent reimbursement for improvements made to the house after dissolution improperly alter the parties' property settlement?

## ANALYSIS

Generally,

the district courts are guided by equitable principles in determining the rights and liabilities of the parties upon a dissolution of the marriage relationship, * * * [and] the district court therefore has inherent power to grant equitable relief "as the facts in each particular case and the ends of justice may require."

*DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 758 (Minn.1981) (quoting *Johnston v. Johnston*, 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968)). However, the interpretation of a stipulation is a legal rather than equitable matter. *See Sandberg v. Johnston*, 415 N.W.2d 346, 348 (Minn.Ct.App.1987). Division of the parties' marital property upon dissolution was governed by Minn.Stat. § 518.58 (1984); *see also* Minn.Stat. § 518.58 (Supp.1987). By statute

all divisions of real and personal property provided by section 518.58 shall be final, and may be revoked or modified only where the court finds the existence of conditions that justify reopening a judgment under the laws of this state.

Minn.Stat. § 518.64, subd. 2 (1984); *see also* Minn.Stat. § 518.64, subd. 2 (Supp. 1987). As such,

Divisions of real and personal property ordered in marriage dissolutions * * * may be revoked or modified only for fraud or mistake.

*Juelfs v. Juelfs*, 359 N.W.2d 667, 670 (Minn. Ct.App.1984).

## I.

The dissolution decree states:

Until the homestead is sold, [respondent] shall pay the mortgage loan obligation upon the [homestead].

[Upon sale, respondent] shall be credited with the amount which she has reduced the balance of the principal amount due under the mortgage from the date of the *entry of this Judgment and Decree* until the time that the property is sold and closed upon.

(Emphasis added.) Respondent started making mortgage payments in December 1984 after the final hearing, six months before entry of the decree.

Appellant argues that when the trial court credited respondent for the amounts by which she reduced the mortgage principal balance between the final hearing and entry of the decree, it violated Minn.Stat. § 518.64, subd. 2. We disagree.

Under the temporary order appellant had responsibility for making the mortgage payments, and by statute:

A temporary order shall continue in full force and effect until the earlier of its amendment or vacation, dismissal of the

main action or entry of a final decree of dissolution or legal separation.

Minn.Stat. § 518.131, subd. 5 (1984); *see also* Minn.Stat. § 518.131, subd. 5 (1986). Therefore, appellant was obligated to make the mortgage payments until entry of the final decree in June 1985.[2] Had he, in fact, done so and respondent not commenced making those payments until June 1985, the trial court could not have granted the relief it did. However, appellant did not make any payments after the final hearing in December 1984. Instead, respondent started making the payments in December 1984 believing that she would be reimbursed as provided in the parties' December stipulation. The trial court properly granted respondent's request for reimbursement from December 1984.

The trial court's decision is consistent with prior case law. In *Peterson v. Lobeck*, 421 N.W.2d 367 (Minn.Ct.App.1988), wife maintained that allowing an offset of husband's accidental overpayment of maintenance against wife's lien interest in the marital homestead amounted to an improper modification of the property settlement under Minn.Stat. § 518.64, subd. 2. This court disagreed and stated:

Here, husband does not seek to modify or revoke the couple's property settlement but simply attempts to recover payments he erroneously made to wife.

*Petersen*, 421 N.W.2d at 368.

In the instant case, respondent's mistaken mortgage payments are analogous to Mr. Petersen's accidental overpayment of maintenance and can be credited to respondent without any improper modification of the property settlement. Credit to respondent for reduction of the principal mortgage balance between December 1984 and June 1985 produces the same result as would have been obtained had the decree been promptly entered. Any other result would allow appellant to inequitably disregard the parties' stipulation and capitalize on the late entry of the decree.

**2.** At oral argument appellant mentioned for the first time a trial court order allegedly issued prior to the final dissolution hearing which made subsequent mortgage payments respon-

II.

We disagree with the trial court's determination that appellant bear responsibility for half of the capital improvements made by respondent to the former homestead.

A trial court is without authority to change a division of real and personal property after the original decree has been entered and time for appealing therefrom has expired.

*Mikkelsen v. Mikkelsen*, 286 Minn. 520, 522, 174 N.W.2d 241, 243 (1970). However,

the interpretation or clarification of a judgment * * * involves neither an amendment of its terms nor a challenge to its validity.

*Stieler v. Stieler*, 244 Minn. 312, 319, 70 N.W.2d 127, 131 (1955). Therefore, a trial court may interpret or clarify an "ambiguous judgment." *Id.* at 319, 70 N.W.2d at 131.

[I]n applying these rules, full effect must be given to that which is necessarily implied in the judgment, as well as to that actually expressed therein.

*Id.* at 319, 70 N.W.2d at 131–32.

If the trial court merely interpreted or clarified the decree when the court burdened appellant with the obligation to pay half of capital improvement costs, such action was proper. If, however, the trial court's action was, in fact, a property division modification, it cannot stand because the court acted without jurisdiction.

**A. JURISDICTION**

Under Minn.Stat. § 518.64, subd. 2. and *Mikkelsen*, a court cannot alter marital property distributions after expiration of the appeal time. Here, that time has passed. Under *Stieler*, a court may interpret or clarify an ambiguous judgment. We conclude that the decree here is not ambiguous either as to the disposition of the former homestead proceeds or as to the parties' responsibilities for financial com-

dent's responsibility. Appellant admits that the record submitted to this court does not contain that order. We are foreclosed from considering it. *See* Minn.R.Civ.App.P. 110.01.

mitments assumed in connection with that property.

Unquestionably the parties could have negotiated, agreed to, and incorporated into their decree a provision addressing the very issue of capital improvements. Countless dissolution decrees contain such provisions. Here, the record is silent as to whether the parties negotiated this issue. Certainly, they did not incorporate such a provision into their stipulated decree, and we are without sufficient evidence to allow the inference that they meant to do so.

It is as important to consider what the parties did include in their stipulation as it is to consider what was not included. Several specific provisions address the former homestead property. The proceeds of sale were to be divided "after realtor's fees, closing costs, and all costs of sale." The only costs referred to regarding disposition of the homestead's proceeds are costs relating to sale.[3]

The stipulated decree also contains provisions which demonstrate the parties' intention to sever their financial relationships and attempt to avoid unnecessary post-dissolution entanglements.

> Each party shall assume and pay all outstanding debts individually incurred * * * *after the date of May 31, 1984* * * *. Each party has agreed to indemnify, defend and hold the other *absolutely harmless from any expense,* claim or liability whatsoever arising from, or in any way connected to such outstanding debts.

The capital improvement debt was one assumed individually by respondent. The decree provision under which each party holds the other "absolutely harmless from any expense" is susceptible of only one interpretation and we do not find this provision ambiguous or in need of "interpretation" or "clarification."

Additionally, the importance of the parties' post-dissolution financial independence is underscored by an additional decree provision which states:

> [appellant] shall not have any rights whatsoever in the said property after the entry of this Judgment, except the right to receive a portion of the equity upon sale as hereinafter specified.

This provision, by prohibiting appellant from any decisionmaking authority regarding the former homestead, makes a de facto grant to respondent of all authority regarding the property. She validly exercised that authority when she made the capital improvements and that exercise is not challenged by appellant. It cannot be. What *is* challenged then is respondent's authority to bind appellant to her own independent decisions and then compel payment from appellant without his agreement. Such authority was clearly not given by the parties themselves in the stipulated decree and was not subsequently agreed upon by and between the parties. Therefore, this modification of the decree and respondent's resulting unchecked authority may not now be foisted upon appellant as an "interpretation" or "clarification" under *Stieler.* When the court, in effect, gave to respondent the authority to bind appellant to respondent's unilateral post-decree decisions, it impermissibly modified a property division provision.

### B. CASE LAW

Respondent argues that *Hanson v. Hanson,* 379 N.W.2d 230 (Minn.Ct.App.1985) and *Sullivan v. Sullivan,* 374 N.W.2d 517 (Minn.Ct.App.1985) support her assertion that the trial court's order was merely an "implementation" and not a modification of the original judgment. We disagree.

In *Hanson,* each party was awarded half the personal property. When the parties could not decide upon implementation of the division ordered by the trial court, the wife was awarded absolute title to all of the personal property and was ordered to pay husband its equivalent value. This court affirmed stating that the trial court's order only "changes the *form of* respon-

---

**3.** We note also the applicability of the principle of *inclusio unius est exclusio alterius* to these

sale costs.

dent's interest from goods to cash in order to fairly implement the decree." *Id.* at 233 (emphasis added).

The failure in *Hanson* to divide the property violated an explicitly articulated, affirmative obligation required under the decree. The parties' disputes caused an impasse and made implementation and execution of an unambiguous decree provision impossible. The court was required to act to end the impasse. Such is not the situation here. There was no requirement in this decree for respondent to make or appellant to pay for any capital improvements to the homestead. As such, the parties did not fail to perform a duty under the decree. This fundamental difference is critical in distinguishing *Hanson.*

*Sullivan* also involves an affirmative duty. There, the original decree required that husband, a real estate broker, sell the homestead between April and June 1985. The parties could not agree upon implementation and execution of this unambiguous provision and an impasse was reached. Subsequently, the trial court ordered that husband's right to sell the house would terminate May 31, 1985 so that wife could list the house with an agency. *Sullivan,* 374 N.W.2d at 518–19. In affirming the trial court, this court noted:

> the parties were having difficulties agreeing on the price and other terms of the sale of the home, and that, in the interests of minimizing those differences, expediting the sale, and insuring terms which are fair to both parties, an uninvolved realtor should be engaged to sell the house.

*Id.* at 519. Thus, as in *Hanson,* trial court action was necessary in order to fairly implement the affirmative obligations of the decree. Here there were no affirmative obligations imposed by the decree which were in danger of being violated or remaining unimplemented. Respondent's reliance upon *Hanson* and *Sullivan* is misplaced.

The dissent's reliance on *Stromberg v. Stromberg,* 397 N.W.2d 396 (Minn.Ct.App. 1986) as controlling is also inappropriate. The *Stromberg* decree was issued by the court after a contested hearing, required

sale of the homestead, and ordered the parties to "cooperate with each other in listing the property for sale * * * and * * * in effecting a sale of the property as soon as practicable." *Id.* at 398. The *Stromberg* decree also ordered that both parties "be equally responsible for and pay such repairs and maintenance as may be necessary." *Id.* at 398. When the parties' efforts to sell the homestead failed.

> The real estate agent suggested to the parties that they make the house more saleable, by either lowering the price or making some changes to the home.

*Id.* at 399. Appellant in *Stromberg* agreed that some of the subsequent improvements made by respondent were "necessary to make the property more marketable." *Id.* at 401. After entry of the *Stromberg* decree, the wife, to whom the court had awarded possession of the homestead, moved out and husband became the possessory party. When the parties returned to court for resolution of all the problems which had arisen in connection with the court-ordered sale of the homestead, responsibility for capital improvements was but one of several issues presented. Because of the unique circumstances of *Stromberg,* including suggestion of improvements to effectuate the decree, the parties' subsequent agreement as to the necessity of those improvements and the nonpossessory spouse becoming the possessory spouse, that case is distinguishable from this one. Most important, despite dissatisfaction with the trial court's ultimate decisions, there is no indication in *Stromberg* that either party challenged the jurisdiction of the court to, in fact, undertake consideration of the capital improvements issue in the first place. Such challenge is made here and is a meritorious one.

## C. EQUITY

The dissent observes that the trial court's findings are unchallenged and that "[i]ndeed, if equity has its say, appellant cannot quarrel with the trial court's decision." However, the issue before this court is not whether the trial court's find-

ings were supported by the record,[4] or whether the trial court acted equitably. The issue is whether the trial court had the authority to act at all. While it may be argued that a trial court acted equitably in a given instance, distilling from that equitable conduct a broad license to modify otherwise unmodifiable property divisions would produce abundant mischief. The statute is clear. Absent fraud or mistake "*all* divisions of real and personal property * * * shall be final * * *." Minn.Stat. § 518.64, subd. 2 (emphasis added); *see Juelfs v. Juelfs*, 359 N.W.2d 667, 670. The statute does not prohibit only inequitable modification of final property divisions. It prohibits *all* modifications of final property divisions. For this reason, the trial court was statutorily forbidden from modifying the decree.

■ A nonpossessory lienholding spouse has *only* those decisionmaking rights in the former homestead as are *specifically* denominated in the decree. That spouse should also have only those duties regarding the former homestead as are specifically denominated in the decree. To permit modification of the decree such as occurred here is tantamount to holding the nonpossessory spouse's homestead interest ransom to the unilateral decisions of the possessory spouse. If the parties wished to stipulate to responsibility for payment of capital improvements, they could have done so. They did not. The trial court cannot now, under the guise of "interpreting," "clarifying," or "implementing," modify the decree in such a manner to make it look as if they did so agree.

## DECISION

■ The trial court did not modify the dissolution decree's property settlement in violation of Minn.Stat. § 518.64, subd. 2 by crediting respondent with the reduced mortgage principal resulting from mortgage payments she made between the final hearing and entry of the decree. Where a dissolution decree is silent regarding capital improvements to a marital homestead, the trial court is without jurisdiction to "interpret" or "implement" that decree to compel a nonpossessory, lienholding spouse to share the costs of capital improvements made by the possessory spouse.

Affirmed in part and reversed in part.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

### 1. Equity

Appellant acknowledges the appearance of inequity in his claim for sale proceeds traced to home improvement costs paid by respondent. Indeed, if equity has its say, appellant cannot quarrel with the trial court's decision. In strictly equitable terms, the appeal is both frivolous and mean-spirited.

Respondent spent $7,280.19 on improvements to the home awarded to her in the proceedings concluded in December 1984. According to unchallenged trial court findings, respondent proved the cost of those improvements and those costs were "fair and reasonable." In addition, the trial court found that these improvements "increased the value and the marketability" of the home, and that the improvements "benefited both parties at the time of sale due to the increased value and marketability of the property." [1] In fact, we deal ultimately with this undisputed trial court finding: "That it is fair and reasonable that [respon-

---

**4.** Appellant, citing the parties' stipulated value for the homestead at $89,900 in 1984 and its sale for $95,000 four years later, challenges the trial court's finding that the $7,280.19 of capital improvements actually increased the value and marketability of this property.

**1.** · Although not challenging trial court findings, appellant observes that it is "subject to debate" whether all of appellant's improvements produced an increased market value of the house. He points to a statement of the parties, included in the 1985 trial court findings, that the home had a value of "approximately $89,900." As respondent observes, there is no evidence that this approximation was the fruit of a professional appraisal. Respondent furnished current evidence that a realtor in 1985 projected sale of the home for $69,000, also without any apparent professional appraisal. If the fact issue were raised, we would have no basis to dispute the current trial court findings.

dent] be reimbursed for the cost of the improvements made to the homestead."

Given the settled facts of the case, demonstrated in trial court findings, we are not dealing here with an occupant's mischievious infliction of charges to the nonoccupant for wasteful expenditures. Moreover, a decision affirming the trial court does not license ransom for frivolous improvement costs. Waste may be precluded by provisions of a decree which squarely deal with home improvement costs. Whether judgments commonly address this topic, we do not know. Absent such provisions, however, payment for unnecessary costs is avoided by a court which finds, unlike the case here, that costs have been incurred unwisely.

A hard and fast rule against recovery of a home improvement investment, absent express license by the decree or the lien holder, might avoid litigation. That is small cause, however, for imposition of a result known to be unreasonable and unfair.

### 2. Equity's Place

Equity, which may indeed vary like the chancellor's foot, sometimes may fail to serve the fundamental interests of those affected by personal and domestic welfare decisions. Nevertheless, even as to the finality of judgments, trial court jurisdiction in a dissolution case "is equitable," and the trial court may award relief "as the facts in each particular case and the ends of justice may require." *Johnston v. Johnston*, 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968) (court powers upon petition to vacate a divorce decree).

This authority of the trial court is an "inherent power to grant equitable relief." *DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 758 (Minn.1981). In addition, however, under the statute on jurisdiction for reopening a judgment to modify language on a property division, the law of the case is wholly shaped by equity. *See Johnston*, 280 Minn. at 86, 158 N.W.2d at 254; Minn. Stat. § 518.64, subd. 2 (1988).

Articulable considerations of equity guided the trial court in this case. The same considerations compel us to affirm. It is abundantly evident that appellant will be unjustly enriched by the decision to unravel the trial court's credible handling of the case.

### 3. Precedent

The equitable result chosen by the trial court is not without precedent. Where the record supported a trial court finding that "improvements added to the overall value of the property and would be reflected in the final sale price," this court determined in 1986 that the occupant should not be responsible for full payment of improvement costs. *Stromberg v. Stromberg*, 397 N.W.2d 396, 401 (Minn.Ct.App.1986). *Stromberg* should not be overruled, expressly or otherwise.

*Stromberg*, like this case, involved improvements made by a spouse in the course of occupancy for a period of three years. Although a real estate agent had earlier urged that "some changes" be made to the home, there is no suggestion in the case that specific improvements were recommended or that anyone but the occupant initially decided which improvements would add to the value of the home. There are few differences between the facts here and in *Stromberg*. The importance of any factual distinction is completely eliminated by the trial court's findings in this case that respondent's improvements increased the value and the marketability of the homestead such that reimbursement for respondent's costs was both fair and reasonable.

In addition to our decision in *Stromberg*, we have on other occasions recognized trial court jurisdiction for altering property decisions to "fairly implement" provisions of an earlier decree. *Hanson v. Hanson*, 379 N.W.2d 230, 233 (Minn.Ct.App.1985); *see also Sullivan v. Sullivan*, 374 N.W.2d 517 (Minn.Ct.App.1985). In *Hanson* and *Sullivan*, the decree of the court failed to deal with a change of circumstances affecting the mechanics in completing a property award. We recognized there the jurisdiction for a post-decree provision which took account for changed circumstances without altering the interests of the parties deter-

mined in the decree. Respondent asks that we do the same here.

Finally, this case is within the parameters of the more routine task of interpreting ambiguous provisions in a decree. *See Stieler v. Stieler,* 244 Minn. 312, 319–20, 70 N.W.2d 127, 131–32 (1955) ("full effect must be given to that which is necessarily implied in the judgment, as well as to that actually expressed therein"). The trial court could rightfully clarify a decree provision contemplating a future home sale where the decree called for payment of "costs of sale" but contained no other reference to maintenance or improvement expenses.[2] Real estate investments, especially homes, are not static investments which can be neglected by the owner without severe loss of value. The recovery of sale value includes costs other than professional fees and expenses. *See Stromberg,* 397 N.W.2d at 401 (requiring a sharing of improvement costs where the decree referred to costs of "repairs and maintenance"). Absent a statement of limits on the occupant's freedom to make improvements, reimbursement for valuable improvements constitutes a fair interpretation of the terms and conditions of a decree contemplating equal division of equity after reimbursements for costs of sale.

I concur in our decision rejecting appellant's plea for profit from mortgage payments respondent made after the hearing in December 1984. Because our reversal on respondent's improvement costs conflicts with fundamental notions of equity and law, I respectfully dissent on that issue.

---

2. Paragraph 17 of the 1985 decree states that each party is to hold the other harmless for claims arising from "outstanding" debts the parties incurred after the first temporary hearing. If this provision is germane at all to obligations incurred after the decree, it is only by implication and it is not an unambiguous declaration on home improvement costs incurred before sale proceeds were divided.